Argued and submitted May 3, reargued July 28; reversed on appeal and affirmed on cross-appeal November 3, 1993, reconsideration denied February 9, petition for review denied February 22, 1994 (318 Or 381)

John C. PAINTER,
aka John C. Webber and Cheer Painter,
*Respondents - Cross-Appellants,*

*v.*

Joe HUKE,
aka Keith L. Huke,
Charles E. Miller, aka Charlie Miller,
and Circle Bar Cattle Company, Inc.,
*Appellants - Cross-Respondents.*

(2954-89; CA A75317)

862 P2d 566

354

Gerald A. Martin filed the briefs for appellants - cross-respondents. With him on the briefs was Francis & Martin.

Michael D. Henderson argued the cause and filed the brief for respondents - cross-appellants.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

EDMONDS, J.

**EDMONDS, J.**

Defendants appeal and plaintiffs cross-appeal from a judgment granting plaintiffs specific performance of an earnest money agreement and awarding damages to plaintiffs. On *de novo* review, we reverse on appeal. ORS 19.125(3).

In August, 1989, defendant Huke listed 200 acres in Wheeler County, a backhoe and a trailer for sale for $35,000. Plaintiffs approached Huke about purchasing the property, and Huke told them that it was listed with Hill and Associates, and that plaintiffs would have to talk with Owens, a Hill and Associates broker. Plaintiffs made an offer to purchase the property through Owens, with a closing date of September 22, 1989. The offer was rejected by Huke.

Huke then made a counteroffer, which required a larger down payment than offered by plaintiffs. The counteroffer provided for a closing date of September 22, 1989, and contained a "time is of the essence" clause. Plaintiffs told Owens that they needed more time to raise the larger down payment but otherwise the offer was acceptable. Owens said that she did not think that extending the closing date would be a problem, but that she would have to check with Huke, and that she would get back to plaintiffs if there was a problem. Owens then added language to Huke's counteroffer extending the closing date to October 22, 1989. That change was initialed by plaintiff John Painter. According to Huke, Owens did not contact him concerning the extension. He testified that he was first informed of the extension on September 19, 1989, when he stopped by Owens' office to see how the closing was proceeding. When asked how he responded when he learned of the extension, he said that he did not agree with it, but "what can you do."

On October 16, 1989, plaintiffs delivered the down payment to Owens.[1] Late on that same day, defendant Miller, an owner of defendant Circle Bar Cattle Company, Inc. (Circle Bar), submitted to Owens, on behalf of Circle Bar, a "backup offer" of $35,001 cash for the property. Huke informed

---

[1] Owens attempted to deposit plaintiffs' check into the escrow account that day. Apparently, the escrow company questioned whether plaintiff John Painter was to use the name John C. Webber, III or John C. Painter and, therefore, refused to accept the check. Owens then deposited the check into her trust account.

Owens that he did not intend to complete the sale with plaintiffs, and Owens informed plaintiffs that Huke had decided not to go through with the deal. Plaintiffs then sent Huke a letter threatening legal action if Huke refused to perform. On October 24, 1989, Huke notified plaintiffs that they were in default under the earnest money agreement and sold the property to Circle Bar.[2] Plaintiffs brought this action for specific enforcement of the contract and for damages. The trial court granted specific performance of the earnest money agreement, and defendants appeal.

Defendants assign error to the trial court's finding that there was a binding agreement between the parties that could be specifically enforced. They argue that the change of closing date from September 22, 1989, to October 22, 1989, constituted a rejection of Huke's counteroffer and was a new counteroffer by plaintiffs that Huke never accepted. Plaintiffs argue that there was a meeting of the minds and that the parties agreed to the sale with a September 22, 1989, closing date but that Huke waived that provision, and is now estopped to deny it.

Plaintiffs have the burden of establishing that there was an agreement with Huke. To that end, they argue that they accepted Huke's counteroffer that included the September 22, 1989, closing date. For there to be an acceptance, "it must be positive, unconditional, unequivocal and unambiguous, and must not change, add to or qualify the terms of the offer." *Shaw Wholesale Co. v. Hackbarth*, 102 Or 80, 94, 198 P 908 (1921). Although plaintiffs attempt to characterize the change in closing date as a request to waive the closing date requirement after acceptance, the record indicates that the discussion between plaintiffs and Owens concerning the closing date occurred contemporaneously with the discussion about Huke's counteroffer. The acceptance was not unconditional. It changed the closing date, a material term of the agreement. In the light of those facts, we find that plaintiffs

---

[2] In his letter to plaintiffs, Huke did not state the reasons for the default. The down payment had cleared Owens' trust account but had not been deposited with the escrow company. Under the terms of the earnest money agreement, plaintiff John Painter was to use the name John C. Webber, III on all documents. Defendants do not argue that the down payment check was not a sufficient tender. Therefore, we do not address that issue.

made a counteroffer instead of accepting Huke's counter-offer. Thus, in order to establish an agreement between themselves and Huke, they must prove that Huke accepted plaintiffs' counteroffer either because Owens accepted on Huke's behalf or because Huke personally accepted.

The next issue is whether Owens had authority to accept the counteroffer or represent to plaintiffs that the change of closing date was acceptable unless she informed them to the contrary. During oral argument, plaintiffs' counsel conceded that plaintiffs were not relying on an apparent authority theory. Therefore, we will not address that issue. *Herzog v. Mittleman*, 155 Or 624, 627, 65 P2d 384 (1937). Our focus is on whether Owens had actual authority, express or implied, to bind Huke to the extension date. Plaintiffs argue that:

> "[Owens] did have the authority to negotiate the matter with defendant Huke. In fact she had that specific duty, not only by the written document employing her, but also, by defendant Huke's statement to plaintiffs * * * that to buy the property they would have to deal with [Owens]. Consequently, when the provision was inserted, [Owens] made the commitment to gain defendant Huke's consent, stating that she did not see that there would be any problem, more than a reasonable time passed for [Owens] to have obtained Huke's consent, without informing [Plaintiffs]."

■■ The real estate listing agreement between Huke and Owens provides, in part:

> "FOR VALUE RECEIVED, you hereby are employed to sell or exchange the property described hereon at the selling price and on the terms noted."

That agreement does not provide, expressly or by implication, authority to accept an offer on terms different from those provided in the contract, or to condition Huke's rejection of an offer or modification. Moreover, Owens testified that she did not have authority to extend the closing date without Huke's approval. Because of those facts, we are not persuaded by the evidence that Owens had actual authority to bind Huke to the change in the closing date.

■■ Plaintiffs also argue that, in any event, Huke ratified Owens' actions. In order for there to be a ratification of an agent's actions, the agent must purport to be acting for the

ratifier in a manner that is actually unauthorized. *Johnson v. Davis*, 252 Or 472, 475, 450 P2d 758 (1969); *Restatement (Second) of Agency* § 85 (1957). When asked his understanding of Owens' authority to change the closing date, plaintiff John Painter testified:

> "Well, she said she would have to call him to get his okay, but she didn't feel that there was any problem with it, the extension on it."

There is no evidence that, when Owens made the representation to plaintiffs that the extended closing date was acceptable, she intended to bind Huke. Rather, her statement to Painter is to the contrary. Under these facts, there could be no ratification.

■        Finally, we consider whether Huke himself accepted plaintiffs' counteroffer. Because plaintiffs' claim involves the sale of real property, ORS 41.580(1)(e)[3] is implicated. There is no signed writing evidencing Huke's acceptance of plaintiffs' counteroffer. Moreover, even assuming that an enforceable agreement could arise from an oral acceptance of a counteroffer, *see Davidson v. Wyatt*, 289 Or 47, 609 P2d 1298 (1980), plaintiffs have not carried their burden of persuasion that Huke orally accepted plaintiffs' counteroffer. The evidence on this issue is conflicting. For example, plaintiffs' amended complaint alleges in its first paragraph, that:

> "On or about 22 August, 1989, Plaintiffs and Defendant, Huke, entered into a written contract whereby Defendant, Huke, agreed to sell and Plaintiffs agreed to buy that real property, pursuant to terms, covenants, and conditions, set forth in the parties' agreement, a copy of which is annexed and herein incorporated by this reference."

Defendants responded to this allegation in their second amended answer and counterclaim:

---

[3] ORS 41.580(1)(e) provides:

"In the following cases the agreement is void unless it, or some note or memorandum thereof, expressing the consideration, is in writing and subscribed by the party to be charged, or by the lawfully authorized agent of the party; evidence, therefore, of the agreement shall not be received other than the writing, or secondary evidence of its contents in the cases prescribed by law:

"* * * * *

"(e) An agreement for the leasing for a longer period than one year, or for the sale of real property, or of any interest therein."

"For answer to Plaintiff's Complaint, the Defendants admit, deny and allege as follows:

"1.

"Admit paragraph 1, but deny that Defendant HUKE extended or agreed to extend the closing date to October 22, 1989."

At trial, Huke testified that he never accepted the extension of the closing date, but he also testified that he believed he was bound by the extension.

■■ Ordinarily, an express admission is conclusive as to the fact admitted. However, when the case is tried as if the admitted fact was in issue, the admission may be waived. *See Turner, Adm'r, v. McCready et al.*, 190 Or 28, 33, 222 P2d 1010 (1950). The parties testified and the trial court heard argument concerning the formation of the contract between plaintiffs and Huke. The essence of the testimony is that plaintiffs believed they had a contract with a closing date of October 22, 1989, while Huke believed he had a contract with a closing date of September 22, 1989. In the light of those facts and the other conflicting testimony, we are not persuaded that there was ever a mutual assent to a closing date. Therefore, there could be no agreement. *See Klimek v. Perisich*, 231 Or 71, 79, 371 P2d 956 (1962).

Because of our resolution of this case, we do not consider defendants' other assignments of error or plaintiffs' cross-appeal.

Reversed on appeal; affirmed on cross-appeal.