Submitted on record and brief June 23, reversed and remanded
September 24, 1997

Lori L. OBRIST,
*Respondent,*

*v.*

William D. HARMON,
*Appellant.*

(9608-68594; CA A95027)

945 P2d 1089

Allen R. Peters filed the brief for appellant.

No appearance for respondent.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

RIGGS, P. J.

**RIGGS, P. J.**

Plaintiff initiated this proceeding under the Family Abuse Prevention Act, ORS 107.700 *et seq*, seeking a restraining order against defendant. The trial court ruled in favor of plaintiff, and defendant appeals.

In a petition filed July 1, 1996, plaintiff alleged that within the previous six months, defendant had caused her bodily injury, attempted to cause her bodily injury, and placed her in fear of immediate serious bodily injury. Plaintiff alleged that, on June 29, 1996, defendant had dragged her by her hair, slammed her into a wall, pushed her into a wall heater, and had punched her son. She further alleged that in January 1996, defendant had thrown her against a freezer. As a result of that filing, plaintiff was granted a temporary restraining order. When plaintiff failed to appear at the hearing on this matter on July 29, 1996, the court vacated the restraining order.

On August 5, 1996, plaintiff filed the petition at issue in the present case, and again sought a restraining order against defendant. That petition alleged that defendant grabbed her by the hair, threw her in the bushes, dragged her by the hair, shoved her into a wall, and hit her son. She further alleged that defendant hit and spanked her in front of her children, and shoved her against a freezer. This petition further alleged that plaintiff had not received notice of the July 29 hearing on her first petition. The court issued a temporary restraining order, and defendant requested a hearing, ORS 107.718(6).

On September 23, 1996, a hearing was held on plaintiff's second petition. Defendant moved to dismiss on the ground that the second petition realleged the same events as the first petition and that the first petition had been dismissed due to plaintiff's failure to appear. Plaintiff, who appeared *pro se*, agreed that the petitions both alleged the same occurrences and further stated that she had not received notice of the first hearing. She stated that defendant had removed mail from her mailbox in the past. Defendant's former wife testified that plaintiff had told her that plaintiff

knew about the hearing. The trial court denied defendant's motion to dismiss.

At the hearing, plaintiff and her 16-year-old daughter both testified about the events of June 29, 1996, as alleged in the petitions. Defendant's former wife testified that plaintiff had been hysterical and intoxicated on June 29, 1996, and that she had observed hand prints on defendant's face. Defendant called another witness who testified that he had seen plaintiff slap defendant twice on June 29, 1996. Defendant tried to call his eight-year-old daughter, but the trial court would not allow her to testify. Defense counsel made an offer of proof that the daughter would testify that plaintiff had struck defendant three times. Defendant then testified that plaintiff was intoxicated and irrational on June 29, 1996, and that she had struck him several times. He testified that he tried to restrain her, but she fell down a bank. The court then continued the restraining order.

On appeal, defendant argues that the trial court erred in denying his motion to dismiss the petition. Defendant asserts that plaintiff should have been barred from litigating the issue, given the disposition of her first petition. Although defendant does not use terms such as issue preclusion or claim preclusion, his arguments inartfully touch on both concepts. *See Drews v. EBI Companies*, 310 Or 134, 139-43, 795 P2d 531 (1990) (discussing differences between claim preclusion and issue preclusion). Therefore, we address whether plaintiff's petition should have been barred under either theory.

Issue preclusion "precludes future litigation on a subject issue only if the issue was 'actually litigated and determined' in a setting where 'its determination was essential to' the final decision reached." *Id.* at 139, *quoting North Clackamas School Dist. v. White*, 305 Or 48, 53, 750 P2d 485, *mod* 305 Or 468 (1988). Issue preclusion applies only if "[t]he issue was actually litigated and was essential to a final decision on the merits in the prior proceeding." *McCall v. Dynic USA Corp.*, 138 Or App 1, 5, 906 P2d 295 (1995) (citations omitted). The vacation of the first restraining order due to plaintiff's failure to appear was not a final decision on the merits of

that petition. Issue preclusion does not bar plaintiff's petition.

■ Defendant's assignment of error may also be read to allege that plaintiff's second petition was barred under the theory of claim preclusion. Claim preclusion applies when a plaintiff has prosecuted an action against a defendant through to a final judgment, the previous litigation concerned the same factual transaction as the later litigation, and a different or additional remedy is sought. *Drews*, 310 Or at 140, *citing Rennie v. Freeway Transport*, 294 Or 319, 323, 656 P2d 919 (1982). Claim preclusion differs from issue preclusion in that it "does not require actual litigation of an issue of fact or law[.]" *Drews*, 310 Or at 140. Claim preclusion does, however, require that a final judgment have been entered in the previous proceeding. The only information concerning the previous case in the record of the present case is an order vacating the restraining order that initially had been entered in the previous case. Defendant makes no argument that the order was a final judgment. *Cf. Strother and Strother*, 130 Or App 624, 628, 883 P2d 249 (1994), *rev den* 320 Or 508 (1995) (a proceeding under the Abuse Prevention Act is a special statutory proceeding and a restraining order issued under the Act, *following the hearing* provided for in ORS 107.718(6), is an appealable order). We conclude that the trial court properly denied defendant's motion to dismiss the second petition.

■■ Defendant also assigns error to the trial court's conclusion that the restraining order should be continued, arguing that the court should have believed his testimony that he had not struck plaintiff. Our review is *de novo*. *Strother*, 130 Or App at 629; ORS 19.125(3). However, even on *de novo* review, "where an issue turns upon the credibility of the witness, as it does here, we place great reliance on the trial court's determination." *Povey v. Clow*, 146 Or App 760, 765, 934 P2d 528 (1997). In this case, plaintiff's and defendant's testimony about the incidents at issue were irreconcilable. Testimony from other witnesses offered some support for each party's testimony. Given those circumstances, the trial court's decision clearly was based on its determination of credibility. On this record, we decline to disturb the court's implicit credibility determination on appeal.

Finally, defendant argues that the trial court erred in refusing to allow him to present the testimony of his eight-year-old daughter. At the hearing, the following exchange took place:

"[COUNSEL]: I am going to call Brooke Harmon. Do you want to walk up here.

"[THE COURT]: Actually, you're not going to call this witness. Next witness.

"[COUNSEL]: Your Honor, we'd at least like to have the competency determined, Your Honor.

"[THE COURT]: Next witness.

"[COUNSEL]: Okay, we'll call Mr. Harmon, Your Honor. Your Honor, if I could be heard. She was a witness too.

"[THE COURT]: You may make your offer of proof. Go ahead and make your offer of proof.

"[COUNSEL]: What she would testify to[?]

"[THE COURT]: Yes.

"[COUNSEL]: Your Honor, she was present in the room when Ms. Obrist came in. She would probably testify that Ms. Obrist appeared to be intoxicated in her perception. She would testify that she watched Ms. Obrist strike Mr. Harmon three separate times. She would testify that Ms. Obrist walked in while Mr. Harmon and the young son were goofing around. Tell them, 'We're goofing around.' That Ms. Obrist just came up screaming, 'What are you doing.' Struck Mr. Harmon. That they went outside and that's what she will testify to.

"[THE COURT]: How old is Brooke.

"[DEFENDANT]: Eight.

"[COUNSEL]: Eight years old.

"[DEFENDANT]: Very intelligent.

"[THE COURT (TO DEFENDANT)]: Have you already been sworn? At counsel table.

"[COUNSEL]: I would also indicate, Your Honor, that I asked her if she knew the difference between truth and a lie and I asked her what the difference was and determined at

least by asking those questions that she was, indeed, competent.

"[THE COURT]:   Ask your first question of this witness."

Defendant argues on appeal that the court erred in excluding his daughter's testimony. Defendant argues that this eyewitness testimony was probative of whether physical abuse of plaintiff or her son occurred on the date in question, and that the testimony would have supported defendant's testimony concerning what had occurred on that date.

■       On the record before us, there is no reason for the exclusion of the proffered evidence. The evidence at issue was relevant and plaintiff did not object to its admission. While the evidence would not have rebutted plaintiff's assertions that defendant struck her or dragged her, it could have undermined plaintiff's testimony in other regards and could have touched on issues of self-defense. We conclude that the trial court erred in excluding this evidence.

Reversed and remanded.