## D. M. WILLSON ET AL. v. J. L. CRAWFORD ET AL.

Decided May 26, June 16, 1910.

**1.—Land Agent—Commissions—Sale—Performance.**

Agents for the sale of land were entitled to the commissions agreed upon when they procured a purchaser able and willing to buy on the owner's terms, but who, after agreeing to take the land, refused to carry out the purchase because the seller could not give possession by reason of having made a lease of the premises to another.

**2.—Same—Commissions Out of Defined Payment—Rescission of Sale.**

A land agent having negotiated a sale for part cash and notes secured by vendor's lien, agreed that his commission might be paid out of the first purchase money note (or, as he claimed, on its maturity). The purchaser was unable to meet the note when due and reconveyed the land to the vendor on the latter's agreement to a rescission and surrender of his notes. Held that the vendor became liable thereby to the land agent for his commission.

ON MOTION FOR REHEARING.

**3.—Pleading—Variance.**

Where the evidence establishes the substantive facts forming the basis of the cause of action alleged, a departure from the allegations in merely subsidiary or evidentiary facts does not constitute a fatal variance.

**4.—Pleading—Defects Supplied by Answer.**

Omissions in plaintiff's pleadings may be supplied by the allegations of the answer.

**5.—Pleading—Case Stated.**

Plaintiffs seeking to recover commissions for negotiating a sale of land for defendant alleged that they had procured a purchaser ready, willing and able to take the land at defendant's price, but that the latter had refused to execute the deed and to pay their commission. Defendants answered that the sale was not consummated because the purchaser refused to carry it out on the ground that he could not get possession. It was proven that the sale miscarried because the purchaser refused to accept the deed and pay the price by reason of the existence of an outstanding lease of the property to another which prevented his getting immediate possession. Held, that there was no fatal variance between the allegations and proof of plaintiffs; that the substance of their cause of action alleged was proven, in that they found

a purchaser and were denied their commissions; and that the answer showing why the sale failed showed no defense.

### 6.—Contract to Sell Land—Outstanding Lease.

One agreeing to buy land was under no obligation to take and pay for it when he could not get immediate possession because of an existing lease of part thereof for another year, of which he was ignorant when he contracted to buy; and the trade not being consummated for that reason, the land agent who had negotiated it for the owner without knowledge of the outstanding lease was entitled to his commissions.

### 7.—Notice—Possession of Tenant.

A land agent negotiating for the owner a sale of land with knowledge that an outstanding lease would prevent immediate possession by the purchaser, would not earn his commission except by presenting a buyer willing to take it subject to such lease. But possession of the land by a tenant of the owner would, it seems, be constructive notice to such agent only of the tenant's rights for the current year, not of an unrecorded lease for a year in addition. At least the burden of proving notice, and possession by the tenant as constructive notice, was on the defendant resisting the action for recovery of commissions, he having authorized the negotiation of a sale without qualifications.

Appeal from the County Court of Wise County. Tried below before Hon. C. V. Terrell.

*McMurray & Gettys,* for appellants.—The proof wholly fails to show that Powers was ready and willing to buy the land and pay defendant's price therefor; but shows, on the contrary, that he, on learning all the facts concerning the place, refused to purchase same at the price defendants had agreed to sell it for. Moss & Raley v. Wren, 120 S. W., 847; Duval v. Moody, 60 S. W., 269; Burch v. Hester & Lawhorn, 109 S. W., 399.

The contract between plaintiffs and defendants was that plaintiffs were to have $1 per acre commission for the "sale" of the land; and, as the prospective purchaser refused to execute any written contract or memorandum to purchase the land, there was no valid sale, and plaintiffs could not have earned any commissions under their contract with defendants until a sale was made. Morris v. Gaines, 82 Texas, 255; Moore v. Powell, 25 S. W., 472; Brock v. Jones, 8 Texas, 78.

As a portion of the land was occupied by a renter, which fact was known to the purchaser, who lived right by it, and he was informed of the extent of the rental term before the trade was closed, such occupancy of the tenant would not be a breach of right of possession in a deed; since the occupant, under those circumstances, becomes the vendee's tenant from the delivery of the deed, in the absence of any other agreement. Baldwin v. Smith, 119 S. W., 111; 11 Cyc., 1119-20; Lindley v. Dakin, 13 Ind., 388.

*R. E. Carswell* and *Robert Carswell,* for appellees.—Plaintiffs had complied with their undertaking to find a purchaser, and were not responsible for defendants' inability to give possession. Brackenridge v. Claridge, 91 Texas, 527; Gibson v. Gray, 43 S. W., 925; Smye v. Groesbeck, 73 S. W., 927; 19 Cyc., 246.

The existence of the lease and consequent inability to give possession

was a material impairment of the marketable character of the title. Roberts v. McFadden, 74 S. W., 109; Baldwin v. Smith, 119 S. W., 111.

Plaintiffs were entitled to their commissions on the sale cancelled by defendants. Nunez v. Dautel, 19 Wall., 560; Crokers v. Holmes, 65 Me., 195; Randall v. Johnson, 59 Miss., 317.

HODGES, ASSOCIATE JUSTICE.—Appellants were the owners of a tract of 1,300 acres of land situated in Cooke County, Texas. The appellees were real estate brokers, with whom the land had been listed for sale. This suit is by appellees to recover commissions on three different sales made of different portions of this tract of land. A trial in the court below resulted in a judgment for the appellees for $568.00 as commissions on one sale of 568 acres made to D. L. Powers, and in favor of the appellants as to the other two claims.

With reference to the sale made to Powers, the evidence shows that through the efforts of the appellees the owners and the purchaser were brought together, and that they agreed upon the price and terms of payment, but that Powers, upon learning that about 35 acres of the land had been rented to a tenant for the succeeding year, declined to complete the purchase. A majority of the court is of the opinion that the appellees were nevertheless entitled to their commissions of $1 per acre, the amount previously agreed upon, and that this portion of the judgment should be affirmed.

Appellees have filed a cross-assignment of error attacking that portion of the judgment denying a recovery for a sale made to J. A. Adams & Sons. As to this transaction the evidence shows the following facts: About December 3, 1906, appellees negotiated the sale of a portion of the 1,300 acres tract to J. A. Adams & Sons for $5,368.00, of which $500 was to be paid in cash and the remainder in ten equal annual installments. When the sale was consummated and the deed passed there was an agreement between the parties to this suit that appellees should wait for their commissions till the first note matured. There is some conflict in the testimony as to what the details of that agreement were. According to the testimony of the appellants, appellees agreed to take their commissions out of the first note when it was paid. This is disputed by the version given by the appellees, their contention being that they only agreed to wait until that note matured for their commissions. However this may be, we do not think the difference in the two versions is material as affecting the right of appellees to recover. It seems that when the first note did mature the Adams people were not able to pay it, and by an agreement entered into between them and the appellants, the latter took a conveyance of the land back and cancelled all the notes which had theretofore been given. Upon this being done appellees were clearly entitled to their commissions for having made the sale. That the first note might have been collected by an enforcement of the vendor's lien retained is not disputed. That it was not so collected on account of the election of the appellants to rescind the sale and resume ownership of the land is equally as certain. Appellants could not in this way defeat the claim of the appellees to commissions after having availed themselves of the services of the latter in bringing about a satisfactory sale of their land.

Under this state of facts the court should have rendered judgment for the appellees for the amount of their commissions, $568.00. That portion of the judgment denying this recovery is reversed, and judgment will here be rendered in favor of appellees accordingly.

The judgment of the County Court is therefore affirmed in part and reversed and rendered in part.

### ON MOTION FOR REHEARING.

As will be observed from the original opinion in this case, the affirmance of that portion of the judgment of the trial court awarding a recovery in favor of the appellees was not concurred in by all the members of this court. The writer was at that time inclined to hold that under the pleadings the evidence did not support the judgment. When the motion for rehearing was filed, and also one asking that the issue upon which the disagreement occurred be certified to the Supreme Court, the latter motion was granted. Since then the writer has, upon further investigation, reached the conclusion that he was in error and that the view taken by the majority was the correct one. This dissent having been withdrawn, the order granting the motion to certify will be set aside and that motion overruled. We will now discuss the motion for rehearing.

Only that feature of the motion will be noticed which relates to the affirmance of the judgment of the trial court, in which the appellees were given $568.00 as commissions for negotiating a sale of a tract of land to Powers. The contention here made is that the judgment is unsupported by the pleadings and the evidence. It is not claimed that there is any defect, fundamental or otherwise, in the statement of the cause of action, but that the testimony does not sustain the case made by the pleadings. The earnestness and ability with which counsel for appellants urge the propositions upon which they rely demand a more extended discussion than was given in the original opinion.

Succinctly stated, the cause of action as set forth in the petition and made by the evidence, is the breach of a contract to pay certain commissions for negotiating the sale of a tract of land. The original petition, after alleging the execution of the contract by which the plaintiffs were engaged for stipulated commissions to sell certain real estate, proceeds: "Plaintiffs on or about January 1, 1907, procured as a purchaser for said land, one D. L. Powers, who was then ready, willing and able to purchase the same and to pay the $1,000 cash, and to execute said notes for the deferred payments. . . . That although plaintiffs had so procured such purchaser for said land, D. L. Powers, who was ready, willing and able to purchase said land on said terms, that said defendants had so agreed with plaintiffs to sell the same, yet the said defendants thereafter, on said dates, refused to comply with their said agreement and to execute to said powers a deed of conveyance for said land and to receive from him the cash payment and the said notes for the deferred payments. Wherefore plaintiffs say that defendants promised and became liable to pay them as said commissions $568.00," etc. After a general denial and other special averments, appellants answered as follows: "That it was not on account of any fault

of those said defendants that said Powers refused to consummate said sale, but on account of his own refusal to consummate the agreement according to the terms of said agreement by said defendants, and because said Powers could not get possession of said land as soon as the deed was made." The facts proved upon the trial show that the land was placed in the hands of the appellees for sale, and that their commission was to be $1 per acre. It had been listed with the appellees for sale at $25 per acre. Powers, however, had declined to pay that sum, but offered $23.50 per acre. Through the efforts of the appellees, Powers and the appellants were broughts together about the last of December, 1906, and they agreed upon the terms offered by Powers. Nothing at the time was said about when possession should be given. At that time a part of the land, 35 acres, had been rented to one Turner for the year 1907. After Powers and the appellants had agreed upon the price and terms of the sale, but before the deed was executed or any payments made, Powers inquired if he could get possession of all the land on January 1st, 1907. He was informed by one of the appellants that 35 acres of it had been rented to Turner for the year 1907. Powers thereupon, and for that reason, declined to complete the purchase and take the land. Upon that issue Powers testified as follows: "I made trade with Crawford and Neely, and went with Crawford to see Leonard to close the trade. When the trade was stated to Leonard he agreed to it; I wrote a check for $500.00 as a forfeit, and just before delivering it I asked Leonard if I could get possession by January 1st, 1907. He replied that he had rented 35 acres to one Turner for 1907, and that I would have to make arrangements with Turner for the possession of that part. I then told him I did not want it unless I could get possession of all the land by the 1st of January, 1907. He replied that he could not give possession of the 35 acres, and I then destroyed the check and walked away. I was then able, willing and ready to carry out the trade I made with Crawford and Neely. . . . I did not ask anything about getting possession of the land until I had agreed on the price and went to Willson and Leonard to finally consummate the deal." The only evidence bearing upon the question as to whether the appellees or Powers knew that the land had been rented was that of Neely, one of the appellees, who testified: "I did not tell Powers anything about the place, or anything about its being rented. He was living right there by it, and knew the place. He was living there within 200 or 300 yards of it."

There are two propositions embraced in the argument of counsel for appellants. The first is that the evidence upon which the judgment is founded does not correspond with the material averments of the petition. The second is that without reference to the variance between the *allegata* and *probata*, the undisputed evidence shows that the failure to complete the sale was not due to any cause for which the appellants were responsible, but, on the contrary, to the refusal of the customer, Powers, to accept the terms offered.

In support of the first proposition, attention is called to the fact that the petition alleges that the failure of the parties to consummate the sale was due to the refusal of the appellants to execute the deed and accept the purchase price, whereas the evidence shows that it was

because of the refusal of Powers, the purchaser, to take the land on account of his inability to get actual possession of the entire tract on the 1st day of January following. As sustaining this proposition we are referred to that line of cases holding that facts not pleaded, though proven, can not form the basis of a judgment. That rule, the soundness of which can not be questioned, manifestly has reference to those substantive facts upon which the cause of action rests. It has no application to the mere variance in the details of the evidence by which those ultimate facts are to be established. The fundamental error arising from permitting a recovery upon proof of substantive facts different from those pleaded consists, not so much in the condition of variance between the allegations and the proof, but in the failure to establish the cause of action asserted; not in proving something different from that alleged, but in not proving that which is alleged. Judgments procured in violation of that rule would, in effect, be obtained without any pleading; for if one may procure a judgment upon proof of facts different from those alleged, his attitude before the court is not aided by having alleged facts which he makes no effort to establish. The failure to distinguish between the substantive facts forming the basis of the cause of action and those matters of purely evidentiary detail has been the fruitful cause of much controversy in appeals like the present. The practice of pleading specifically what may be termed subsidiary facts—that is, those which would otherwise be regarded as included by implication in some general substantive averment—is, when done or required, intended for the benefit of the opposing party, in order that he may be apprised of the particular line of evidence he will be called upon to meet. Here a departure in the proof from the facts pleaded is not a fundamental defect in the proceedings which would render the judgment invalid, but merely a variance which the opposing party might waive by his acquiescence, or failure to object to the testimony at the proper time. The mere specification of subsidiary facts in the pleadings does not make them substantive averments when they otherwise would not be such in the general statement of the cause of action. Let us apply those principles to the case before us.

When dissected, the petition in this case states substantially the following: 1. The contract whereby the plaintiffs were engaged, at a stipulated commission, to sell the appellants' land. 2. The performance of the service undertaken by the appellees. 3. The breach, that is, the failure of the appellants to pay the agreed commissions. 4. The damages. The objection on the ground of variance between the *allegata* and *probata* here made can apply, if at all, only to the portion of the petition embraced in the second of the above subdivisions. It may be true that having stated that they contracted to sell the land, the plaintiffs were required to also state that the sale had been made through their efforts, or that they had procured a purchaser who was ready, willing and able to purchase upon the terms proposed, and that the sale was not completed for some cause for which the appellants were responsible. The latter course was adopted. But it is claimed that the pleadings set out one dereliction on the part of the appellants as such cause, while the proof shows another; that they alleged that the appellants refused to make the deed and accept the purchase price, and

have proved that the sale failed on account of the inability of appellants to deliver possession. No objection was at the time made to the proffered testimony, and the question was not raised till after judgment was rendered. The petition in that connection does say that the appellants refused to comply with their agreement. This averment, standing alone, and in the absence of a special exception, would have been sufficient to admit proof of any facts tending to show such refusal or failure. The particular reason why the sale was not completed was of minor importance. The addition in the petition in that connection of the words "and to execute to Powers a deed," etc., did not affect the substance of the averment of refusal on the part of appellants.

But there is perhaps a stronger reason why this objection is not now tenable. It is a well established rule that the omissions in the pleadings of one party may be cured by the allegations of the other. Melton v. Beasley, 121 S. W., 574, and cases cited; Towns, Texas Plead., 273. In this instance the reason why the sale was not completed, the refusal of Powers to take the land because of inability to get possession of all of it upon the execution of the deed, is set up in the appellants' answer. Whatever may have been the defect in the pleadings of the plaintiffs, the pleadings of both parties, taken as a whole, were amply sufficient to admit the proof and support the judgment rendered.

We come then to the next question, does the evidence show a right of recovery? In other words, did the appellees produce a customer in Powers, who was ready, willing, and able to take the land upon the terms proposed? The controversy upon this issue may be narrowed to the inquiry, what were the terms proposed? No question is made of the willingness and ability of Powers to take the land at the price and upon the terms of payment demanded. But he was unwilling to take it burdened with a lease of a part of it for one year. Generally when one purchases land, the acquisition of title carries with it complete dominion and the right of pedal possession within a reasonable time, and in the absence of some stipulation, or agreement, to the contrary, this is what every purchaser may regard as being embraced in a proposal to sell land. This right of immediate possession may be said to have been included in the general terms proposed by the appellants when they placed their land in the hands of the appellees for sale without any qualifications or restrictions. Powers had a right to expect as much when he accepted the offer to sell. His refusal to complete the sale upon being told that he could not get possession of the entire tract for a year did not make him any the less a customer ready, willing and able to purchase upon the terms implied in the general and unqualified offer to sell made by the appellants. The lease to Turner for one year, while not strictly a defect in the title of appellants, nor an interference with the constructive possession which a conveyance of the legal title would have vested in Powers, was nevertheless an estate for a term which had been carved out of that which Powers was to get, and to that extent detracted from the rights which he would have acquired by the deed. It is true that if the appellees undertook to sell the land with a knowledge of this situation, they would not be entitled to recover. In such an event it was their duty to disclose that fact to their prospective purchaser, and their failure to do so would have been

a dereliction sufficient to defeat their right to commissions in the absence of a completed sale. It is not claimed that they had any actual notice of the existence of the Turner lease, but that they had constructive notice. To establish this reliance is probably placed upon the assumption that Turner was in possession. The record fails to show this, and we can not indulge that presumption. But assuming that he was in possession, we can not say, as a matter of law, that such a situation would be notice to them that he had a term extending over another year. However, that question is not involved and need not here be decided. If appellants concede that there was a lease to Turner which interfered with the possessory rights of the purchaser, and that this defeated the sale, then we think it devolved upon them to show that the appellees knew of that situation. This they have not done. Hence, we conclude that appellees were entitled to their commissions upon the showing made in the record before us.

The motion is overruled.

*Affirmed in part and reversed and rendered in part.*