Argued March 15; affirmed April 26, 1949

## SEXTON *v.* BERENSON
205 P. 2d 146

*Howard P. Arnest,* of Portland, argued the cause and filed a brief for respondent.

*Bartlett F. Cole,* of Portland, argued the cause for appellant. With him on the brief were Ernest Jachetta and Don Eva, of Portland.

Before LUSK, Chief Justice, and BRAND, ROSSMAN, KELLY and BAILEY, Justices.

LUSK, C. J.

Plaintiff, a real estate broker, sued the defendant, Rose Marie Berenson, to recover a commission of $675.00 alleged to have been earned by him in procuring a purchaser of real property, a dwelling house in the city of Portland owned by the defendant. His complaint also included a claim for $150.00 attorney's fees, pursuant to a provision of his contract of employment, and for reimbursement of the sum of $12.50, the cost of a title report advanced by the plaintiff. A trial before the court without a jury resulted in findings and a judgment for the plaintiff as prayed for in the complaint. The defendant has appealed.

On May 20, 1946, the defendant listed her property with the plaintiff and signed a printed form of contract containing, among other provisions, the following: "For value received, you are hereby employed and authorized to offer for sale, exchange or conveyance, and are given the exclusive right to sell, exchange or convey the property described on the back hereof at the price and terms there noted, or at such price and terms as I may hereafter authorize or agree to. You are hereby authorized to accept a deposit on the pur-

chase price of said property and, in my name (or otherwise) to execute and deliver a binding, written contract for the sale, exchange or conveyance thereof.'' The price listed on the back of the printed form was ''Cash $13,650.'' There also appear on the back, with other items of information about the property, the printed words ''Who occupies?'', followed by the pencilled notation ''Tenant''.

The plaintiff, through one of his salesmen, received an offer of $13,500.00 for the property, which he accepted subject to the defendant's approval. The purchaser and plaintiff, on May 27, 1946, executed the usual form of earnest money receipt, the purchaser making a deposit of $150.00. The receipt contains this provision, ''Possession to be given as soon as possible after July 1, 1946''. Plaintiff wired the defendant the terms of the offer, but did not mention the matter of possession. Defendant wired back her approval. It later transpired that the defendant was unable to comply with the stipulation for possession because the tenant refused to vacate the premises and could not be gotten rid of inside of a year. Plaintiff thereupon called the deal off and returned the deposit money to the purchaser.

In this court the sole reason advanced by the defendant for reversal of the judgment is that the plaintiff, in agreeing to give to the purchaser possession of the property as soon after July 1 as possible, departed from the terms of his authorization. It is said in defendant's brief that, whereas the plaintiff was authorized to sell a ''tenant-occupied'' house, he ''actually procured a contract for his principal for the sale of a house to be tenant-free on or shortly after July 1, 1946.'' And the principle is invoked that ''If

a broker, at the time he makes a contract with the owner for the sale of the latter's property, knows of defects in his employer's title or knows facts sufficient to put a reasonably prudent man on inquiry, which, if followed with reasonable diligence, would bring him to such knowledge, he is not entitled to recover commissions where the sale fails because of such defects.'' Annotation, 156 A. L. R. 1398, and cases there cited.

The defendant's contention is not supported by the evidence and cannot be sustained.

■ The contract itself contains no provision limiting the broker's authority with respect to the time of possession. An agreement for the sale of land implies a reasonable time for performance where no time for performance is specified. 55 Am. Jur., Vendor and Purchaser, 477, § 7. Similarly, a broker's contract authorizing him to enter into a binding contract of sale on behalf of his principal without specifying the time within which possession may be given implies that the broker may agree to give possession within a reasonable time. The mere fact of the notation on the back of the contract that the property was occupied by a tenant would not, without more, authorize a different construction of the instrument. The notation conveyed no information as to the terms of the tenancy and did not purport to be a limitation on the broker's authority. It may be true that the broker was advised that he was authorized to sell a ''tenant-occupied'' house. But it is not true that he was advised that it would continue to be a ''tenant-occupied'' house after July 1, 1946. See *Willson v. Crawford,* 61 Tex. Civ. App. 580, 130 S. W. 227.

■ The claim that the plaintiff had actual or constructive notice of the terms of the tenancy is opposed

to all the evidence in the case, not only that on behalf of the plaintiff, but that on behalf of the defendant as well. The plaintiff's salesman, James H. Henson, who secured the listing and made the notation referred to, testified that the defendant told him at the time that "the tenant's lease was to expire July 1, 1946, and she said that it might take a short time after that; she had an apartment for him." Mrs. Berenson did not deny this; in fact she corroborated it. She did testify, however, that she asked Henson to "give me five days leeway in order to tell Mr. Hunt, the tenant, that the house was being put up for sale, and that I had an apartment for him, and thought that he would move out because of that." The defendant places no reliance in this court upon her testimony about five days leeway. Disregarding the objection made on the trial by the plaintiff that evidence of such an oral agreement would be inadmissible as an attempt to import by parol a new term into the written contract, it is sufficient to say that this testimony was denied by Henson and the issue is therefore conclusively settled against the defendant by the findings of the trial judge.

On May 22, 1946, two days after the listing agreement was signed and five days before the earnest money receipt was executed, Mr. Hunt, the tenant, wrote Mrs. Berenson a letter in which he stated that he had a letter from her authorizing him to remain in the house until June 30, 1947, that he was "surprised today to be notified by the Sexton Co. that you had listed it with them", and that "I will be forced to inform any prospective purchaser that I have your signed agreement to stay here until June 30, 1947, and that it cannot be sold unless a purchaser is willing to

abide by our mutual agreement." There is no evidence that Mrs. Berenson ever answered this letter or communicated its contents to the plaintiff. On cross-examination about it she testified that she expected to get Mr. Hunt to move into an apartment house she was buying and that she did not expect the purchaser, who had put up the deposit, to wait until July, 1947, to move into the house.

On May 27, 1946, the day the earnest money receipt was signed, Mrs. Berenson was in Everett, Washington. On the next day the plaintiff wired her that he had an offer of $13,500.00. She immediately answered by wire, "Everything agreeable. Go ahead with deal." On June 3 the plaintiff wrote her:

"Regarding the sale of your property at 4022 N. E. Stanton Street, we wish to inform you that according to the tenants, they have to (sic) right to occupy the premises for one year after the date of expiration of your lease, which is July 1, 1946. We were of the opinion that the tenants were to vacate the property July 1, 1946 and of course so informed our purchasers. It is quite evident that the tenants have no desire to cooperate with us in any way and are going to try to maintain possession until the first of July, 1947. If they have this right, of course, we will have to make some arrangements with the purchaser."

The defendant answered on June 5 by mail, saying that her tenants' "written lease is up July 1", that "they can't build and are trying to bluff into staying until they can build", that the tenants were paying $65.00 a month and all the expenses such as heat, water, light, etc., and "it is up to the buyers if they wish to let them stay at the above rent, or if they wish to occupy the house as of July 1, 1946." Whether or not Mrs. Berenson's tenant had a written lease is

left in a state of high confusion by her testimony, which is the only evidence on the subject. No lease was produced. That is a matter of no great conseqence however. For Mrs. Berenson came to Portland, consulted attorneys, and was advised that, under certain regulations of the O. P. A. having to do with her failure to register the house with the government agency, she had no legal right to oust her tenant until July 1, 1947. When this fact was disclosed the plaintiff returned to the prospective purchasers the deposit money. This, of course, he was legally bound to do because possession given on July 1, 1947, would not be "possession as soon as possible after July 1, 1946." Defendant's counsel concede that the phrase means the same thing as possession "within a reasonable time after July 1, 1946", and that a year thereafter would not be a reasonable time.

From the above brief review of the evidence it is quite apparent that Mrs. Berenson maintained at the time she signed the listing agreement and consistently thereafter until she received legal advice to the contrary, that her tenant had no right to remain in the house after June 30, 1946. She now claims that the plaintiff should have been aware of facts about her own tenant's relation with her, which all along she had insisted did not exist. Manifestly her position is untenable.

The evidence fully supports the judgment, which is, therefore, affirmed.

Kelly, J., did not participate in the decision.