Argued and submitted July 25, reversed and remanded with instructions
October 11, 1995

## Philip D. OCHS,
*Appellant,*

*v.*

## Deborah T. ALBIN,
*Respondent.*

## (CV93-1005; CA A85272)

903 P2d 906

David K. Gerstenfeld argued the cause for appellant. On the brief was Richard T. Ligon.

Robert D. Corl, Jr., argued the cause for respondent. With him on the brief were Robert D. Street and Corl & Street.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

## EDMONDS, J.

Plaintiff appeals from a judgment denying his claims for specific performance of an earnest money agreement and damages. He also assigns as error the award of attorney fees to defendant. On *de novo* review, we reverse. ORS 19.125(3).

In July 1993, plaintiff contacted defendant expressing interest in purchasing a house that defendant owned and used as a rental property. Defendant showed little interest in selling the house, until plaintiff presented her with a proposed earnest money agreement and a check for $1,000 earnest money toward the purchase of the property. The agreement was written on a preprinted form entitled "Owner's Sale Agreement and Earnest Money Receipt." It stated, in part:

"RECEIVED OF [plaintiff], hereinafter called purchaser, $1,000.00, as earnest money and in part payment for the following described real estate situated in the City of Corvallis * * * which we have this day sold to the purchaser for the sum of Twenty-Five Thousand Dollars * * * on the following terms, to wit: [$1,000 as earnest money, and $1,500] upon acceptance of title and delivery of deed or delivery of contract * * * balance of Twenty-Two Thousand Five Hundred Dollars * * * payable as follows: Seller to carry the balance in the form of a Land Sales Contract. Terms of contract to be 10% interest, 10 yr amortization. Contract shall have a balloon payment of the balance due at 3 years. Balloon due date may be extended yearly by purchaser making an extra payment equal to 1% (one) of the contract balance. Purchaser's attorney to draw up contract at purchaser's expense. Payments to be made through an escrow company. Purchaser has option to finance through other means. Payment minimum of $250.00/mo."

The preprinted form also contained language regarding the prorating of taxes, as well as a promise by seller that title would be delivered free and clear of all liens. The agreement indicated that the parties intended to close the sale on September 1, 1993, at Key Title Company. However, the sale was "contingent upon inspection by purchaser and approval of any inspections necessary for financing." The agreement also provided:

"In any suit or action brought on this contract, the losing party agrees to pay the prevailing party's reasonable attorney's fees to be fixed by the trial court, and on appeal the prevailing party's reasonable attorney's fees to be fixed by the appellate court."

Both parties signed the agreement on July 24, 1993. Plaintiff gave the agreement to defendant and instructed her to take it to the title company and open an escrow account there. Plaintiff immediately began making preparations to close the sale. He contacted his attorney to draft a land sale contract, and also contacted two banks about the possibility of financing the purchase. A few days later, plaintiff contacted defendant to make arrangements to show the house to prospective renters. Defendant agreed to meet with plaintiff, but failed to show up at the appointed time. Plaintiff tried again to schedule an appointment to show the house, and again, defendant failed to appear. On July 30, defendant sent a letter to plaintiff, stating that she was "going to back out of selling [him] the house * * *," because she had talked to family members and her accountant, and they had pointed out to her certain negative consequences of such a sale. In particular, she stated that she could not afford the loss of monthly income she received from the property and that she had been advised that some of the payment terms were unfavorable to her. She also stated that she had already spent more than $25,000 in remodeling the house, and that she needed the house for storage of her business equipment.

Plaintiff brought this action against defendant, alleging that the parties had entered into an enforceable earnest money agreement. After a bench trial, the court stated, in a memorandum opinion:

"The Court finds that there was a valid contract entered into by the parties. * * *

"* * * * *

"The contract * * * clearly states that it is an *Owner's Sale Agreement* and earnest money receipt. The Agreement states that the $1,000 is being received in part payment for property 'which we have this date sold to the purchaser for the sum of.' The Defendant has been involved in previous purchases and sales of real property and would have some knowledge of such matters. * * * The Defendant's reference to backing out of the Sale Agreement convinces the Court

that she knew she had agreed to sell the property. The Defendant may well have not understood the potential effects and ramifications of breaching the contract, but she did know that she was backing out of selling the property.

"The Court is satisfied that it cannot require the Defendant to enter into a Land Sales Contract with the Plaintiff as prayed for in the complaint. * * *

"In our case, the only major missing factor is what the actual terms of the Land Sale Contract should include. The Plaintiff argues that this is not significant, and the Court should require some 'standard Land Sale Contract.'

"It is apparent from the proposed changes in the draft * * * that the Plaintiff, buyer, was going to be seeking language very favorable to him. It appears that he felt that as his attorney was drawing it, * * * he could set the terms of the contract. While the Plaintiff's attorney may have advised more reasonable language to protect the seller, the Plaintiff might not have agreed. The Plaintiff's including a 'floating balloon payment' provision in the Earnest Money Agreement is some indication of his intentions.

"While the Court in earlier cases may have referred to standard forms, it is apparent that after [*Booras v. Uyeda*, 295 Or 181, 666 P2d 791 (1983)] and [*Genest v. John Glenn Corporation*, 298 Or 723, 696 P2d 1058 (1985)], a Court of Equity cannot draft a Land Sale Contract for the parties. * * *

"* * * * *.

"The Plaintiff offered no proof of damages other than the current appraised value of the property. Even if the Plaintiff was not withdrawing his claim for money damages, the Court would deny such damages as they cannot be specifically enforced." (Emphasis in original.)

The court entered judgment in favor of defendant and ordered plaintiff to pay defendant's attorney fees.

Plaintiff first assigns error to the trial court's refusal to specifically enforce the agreement. On appeal, defendant relies on the holdings of *Booras* and *Genest*.

In *Booras*, the court said:

"To be entitled to specific performance, a contract must be definite in all material respects, with nothing left for future

negotiation. The foregoing proposition is subject to an exception that '* * * [i]f there is sufficient intent expressed to make a legally valid contract, a court of equity can make certain by its decree, within limits, subordinate details of performance which the contract itself does not state.' " 295 Or at 191-92 (quoting *Howard v. Thomas*, 270 Or 6, 13, 526 P2d 552 (1974)(citations omitted)).

Plaintiff maintains that the material terms of the agreement are sufficiently definite to be enforceable under the holding in *Booras*, because the terms of the land sales agreement that was to be prepared are discernable from the earnest money agreement. Defendant counters:

"Defendant * * * is entitled to favorable terms in a complex land sale contract protecting her security interest and * * * those material elements were not agreed upon. In this complex real estate matter, the land sale contract is more than an inconsequential or subordinate detail."

For the following reasons, the holdings in *Booras* and *Genest* are not controlling. First, the fact that the parties contemplate a future writing does not by itself prohibit specific performance. If all of the material terms that are to be incorporated into a future writing have been agreed on, the initial agreement is specifically enforceable. *See Wagner v. Rainier Mfg. Co.*, 230 Or 531, 540, 371 P2d 74 (1962). Second, in every agreement for the sale of land, the essential terms, other than terms that may be unique to a particular agreement, include the designation of the parties, a description or adequate identification of the property to be sold, the promise to sell and to buy, the purchase price and how it shall be payable, and a fixed time and place for the delivery of the deed, *i.e.*, the "closing" or "settlement." 1 Milton R. Friedman, *Contracts and Conveyances of Real Property* § 1.2(b) (5th ed 1991); *see also Genest*, 298 Or at 745-46.

In both *Genest* and *Booras*, the agreements were held not to be specifically enforceable, because they failed to sufficiently specify certain basic essentials to an agreement for a sale of land as well as the terms that the parties indicated were essential to their particular agreements. In *Genest*, the parties entered into an agreement for the sale of a business, a ten-year lease of the real property on which the business was conducted, and an option to purchase the real property for

$425,000. Later, the purchaser sought specific performance of the option to purchase the real property. The option provided that no more than 29 percent of the purchase price could be paid "in year option is exercised." The court held that the terms of the option were not sufficiently definite for specific performance in that the agreement did not specify what was meant by the "year the option is exercised," *i.e.*, whether it was the calendar year or the 12-month period in which the first payment was made. The agreement also did not specify whether the purchaser had a right or obligation to finance the balance of the purchase price, nor did it express what form the sale would take, what would govern the fixing of the interest rate on the unpaid balance, or what the parties intended as to the subordination of existing liens. As the court pointed out, the gaps in the agreement pertained to the essential terms of the agreement. *Genest*, 298 Or at 737-39.

In *Booras*, "[t]he earnest money agreement expressly referred to the preparation of a 'land sales contract,' [which] was to include additional provisions, some for the plaintiff's benefit, some for the [defendant's]." 295 Or at 192. Some of those additional provisions included a "release clause" that would enable the buyer to have portions of the property released to him as he reduced the balance owed on the agreement, and a provision requiring the buyer to provide seller with security in equity other than the subject property. The agreement was indefinite as to the amounts to be paid for partial release or what portion of the security would be released in exchange for partial payment. Because the agreement was not definite as to its essential terms, the court declined to specifically enforce it.

■ In contrast to *Genest* and *Booras*, the terms of the earnest money agreement in this case regarding payment of the purchase price are sufficiently definite to be enforceable. The agreement's payment terms require plaintiff to make a down payment of $2,500, and to pay the balance of $22,500 at 10 percent interest on a 10-year amortization schedule. The agreement also indicates that the parties intended the payments to be made monthly.[1] The terms regarding the balloon payment are also sufficiently definite to be enforceable.

---

[1] Plaintiff explained that the agreement's provision that the minimum monthly payment would be $250 per month was due to defendant's concerns that she must receive at least that amount in order to pay off her outstanding debt on the property. The evidence indicates that the exact monthly payment would have been $297.35 or $297.36.

■ ■    Nevertheless, defendant argues that because the agreement did not specify defendant's remedies in the event of a default to protect her security interest in the property, the agreement is unenforceable. We disagree because the parties agreed on a land sale contract as the form of this agreement. In a land sale contract,

> " '[t]he seller agrees by contract to convey title upon receipt of the full purchase price * * *. Timely payment of the installment is a condition precedent to the obligation of the seller to complete performance by delivering the deed. If the buyer defaults on an installment payment, the seller has the right to declare the contract at an end, repossess the property, and retain any payments made to date.' " *Bedortha v. Sunridge Land Co., Inc.*, 312 Or 307, 311, 822 P2d 694 (1991) (quoting Patrick A. Randolph, Jr., *Updating The Oregon Installment Land Contract*, 15 Willamette L Rev 181, 182 (1979)).

Thus, a land sale contract implicitly provides a remedy to a seller on default, because the title remains with the seller until the purchase price is paid in full. *Braunstein v. Trottier*, 54 Or App 687, 635 P2d 1379 (1981), *rev den* 292 Or 568 (1982). In the event of a default on a land sale contract, the remedies such as forfeiture or foreclosure arise by operation of law. *See, e.g.*, ORS 93.905 - ORS 93.915 (procedure for declaring a forfeiture of vendee's interest in a land sales contract); *see also Savings Co. v. MacKenzie*, 33 Or 209, 211, 52 P 1046 (1898) (holding that on actions to enforce right of seller to have equitable contract of vendee foreclosed is in nature of equitable remedy). There is no evidence that any of the other terms not included in the earnest money agreement were essential to the parties' agreement. *Accord Miller v. Ogden*, 134 Or App 589, 594, 896 P2d 596 (1995) (affirming denial of specific performance, where parties' memorandum of agreement did not specify form of sale or address various "substantive concerns"). We conclude that plaintiff is entitled to specific performance of the earnest money agreement that the parties executed.

■■■    Plaintiff also argues that he is entitled to an award of money damages for profits that he would have earned from renting the property, and that he "would have realized upon sale of the Property." As to the lost rental profits, plaintiff's only evidence is that he had contacted some potential renters

who were interested in looking at the home, and that he had told them that the rent would be between $175 and $200 for each person. No renter committed to renting the house or to paying that amount in rent. We conclude that plaintiff has not carried his burden of proving that he has suffered damages for lost rental profits. Similarly, plaintiff testified that he did not intend to sell the property during the time defendant was in breach of the sales agreement. Again, he has not proven that he lost a sale of the property because of defendant's breach.

In summary, plaintiff is entitled to specific performance of the agreement according to the terms set forth in the earnest money agreement. The order awarding attorney fees to defendant as the prevailing party falls with the judgment for defendant.

Reversed and remanded for entry of judgment granting plaintiff's request for specific performance.