Argued and submitted July 25, 1996, reversed and remanded with instructions on appeal and cross-appeal March 5, 1997

Robert R. POVEY
and Nancy M. Povey,
husband and wife,
*Appellants - Cross-Respondents,*

*v.*

Gary L. CLOW,
*Respondent - Cross-Appellant.*

(93-CV-0490-TM; CA A88206)

934 P2d 528

Stanley E. Clark argued the cause and filed the briefs for appellant - cross-respondent.

William J. Storie argued the cause for respondent - cross-appellant. With him on the brief were John D. Sorlie and Bryant, Lovlien & Jarvis.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

ARMSTRONG, J.

## ARMSTRONG, J.

Plaintiffs Robert and Nancy Povey brought an action for specific performance of a contract for the sale of real property. Defendant counterclaimed, seeking rent for plaintiffs' use of the property. The trial court entered a judgment denying specific performance but awarding plaintiffs $2,020. On *de novo* review, we reverse on plaintiffs' appeal and on defendant's cross-appeal.

In 1977, plaintiffs purchased commercial land in Redmond that included the Chadwick Building, in which Robert's business was located, and also the property at issue here, 342 and 344 S. 7th Street (the property). At the time of their purchase, plaintiffs assumed the purchaser's interest in a land-sale contract on which Ruth Kenna was the seller. In 1990, plaintiffs sold the parcel to one Ryan who immediately resold it. Defendant purchased the parcel in 1991, assuming the contract with Kenna.

In March 1992, a fire in the Chadwick Building rendered it uninhabitable, and defendant offered to rent space to Robert at 344 S. 7th. Robert accepted. Robert and defendant then began discussing the possibility of plaintiffs purchasing the property. Defendant testified that he was interested in selling quickly in order to pay off an encumbrance.

Robert testified that, on September 1, he had a conversation with defendant in which the parties reached an agreement for the sale of the property for $58,000 if plaintiffs could put $50,000 down by September 2 and obtain a lot-line adjustment for the property. Defendant disputes that characterization of the transaction, calling the agreement "tentative." Defendant testified, and Robert acknowledged, that there was no agreement at that time as to what kind of deed would be used to convey the property. The parties also did not discuss the treatment of the Kenna contract or the payment of outstanding property taxes on the property.

On September 2, plaintiffs delivered a check to defendant for $50,000, using $38,000 that they had borrowed from a private party and $12,000 of their own funds. On the check is the following:

"Balance = $8,000; 'for lots 15 & 16, Block 26, Redmond Townsite, except East 25' (342 & 344 S. 7th Street, Redmond)."

The check was dated September 2 and was endorsed by defendant on the same date. Also on September 2, plaintiffs filed an application for a lot-line adjustment and paid the application fee of $25.

On February 16, 1993, the city notified defendant that the lot-line adjustment had been approved. On February 18, the county cartographer notified defendant that the adjustment could not be processed until the property taxes for the property were brought current. Then in June, the bank told Robert that it could not complete the financing until Kenna's interest in the property was removed.

The parties were unable to agree about payment of the taxes or the removal of the Kenna encumbrance. Finally, in September 1993, plaintiffs presented defendant with an earnest money agreement. He refused to sign it and also refused to sign a second agreement. In November, plaintiffs demanded that defendant pay the taxes so that the lot-line adjustment could be completed. He refused and, on November 5, tendered a $50,000 cashier's check to plaintiffs. Plaintiffs tendered the check back to defendant, which was followed by tenders back and forth between the parties.[1] This litigation followed.

Plaintiffs sought specific performance of the contract, alleging that defendant "refuses and continues to refuse to convey marketable title to the property[.]" Defendant counterclaimed, alleging that plaintiffs had occupied the property without paying rent in a total of $18,720.

The court held that there was no agreement as to the Kenna encumbrance, the property taxes or the title to be transferred and, therefore, that the agreement between the parties failed to contain the terms that would allow specific performance. Plaintiffs assign error to that holding.

■ To be entitled to specific performance, a contract must be definite in all material respects, with nothing left to

---

[1] At the time of trial, the check was in defendant's possession.

future negotiation, subject to the exception that, if there is a sufficient intent to make a valid contract, a court of equity can supply, within reasonable limits, subordinate details of performance that the contract does not state. *Booras v. Uyeda*, 295 Or 181, 191, 666 P2d 791 (1983). Plaintiffs contend that all the "material" elements—the property, the price, and the time of payment of the contract—were agreed upon. Defendant argues that for there to be a valid contract, there must be a meeting of the minds as to all of the contract's terms, *Phillips v. Johnson*, 266 Or 544, 555, 514 P2d 1337 (1973), that there was no meeting of the minds on September 1 as to material terms, and that the court cannot order those terms. *See Booras*, 295 Or at 193 (court of equity cannot, under guise of filling gaps, make contract which it thinks the parties would have agreed to).

■■ Plaintiffs had the burden to establish that the September 1 contract was definite in all material respects, with nothing left for future negotiation. *Painter v. Huke*, 124 Or App 353, 356, 862 P2d 566 (1993), *rev den* 318 Or 381 (1994). In every agreement for the sale of land, the essential terms include the designation of the parties, the identification of the property, the promise to sell and buy, the purchase price and how it will be paid, and a fixed time and place for the delivery of the deed or "closing." *Ochs v. Albin*, 137 Or App 213, 218, 903 P2d 906 (1995), citing 1 Milton R. Friedman, *Contracts and Conveyances of Real Property* § 1.2(b) (5th ed 1991). Apart from those essentials, what is material will depend on the nature of the parties' agreement, which depends on the particular circumstances of the property or the parties. *Miller v. Ogden*, 134 Or App 589, 600, 896 P2d 596 (1995) (Edmonds, J. concurring).

Defendant's position is that the taxes, the Kenna encumbrance and the type of deed were all material terms to which the parties did not agree. In his testimony, defendant sought to show that the parties had discussed the taxes and that Robert had agreed to get Kenna to remove the encumbrance. However, the evidence does not support a finding that taxes and the encumbrance were considered—much less considered to be material—at the time defendant agreed to sell the property. Rather, the evidence shows that those

issues arose and became "material" to defendant's willingness to proceed with the sale at a later time.

Defendant testified that, as a second condition to the agreement, Robert was to convince Kenna to convey the property to defendant without additional consideration.[2] Robert disputed that contention. He testified that he did not know that Kenna still had an interest in the property until she telephoned him in May 1993 and that in June, as a favor to defendant but not as a condition of the sale, he agreed to present the idea to her. As to the taxes, defendant testified that during their initial discussions, he and Robert discussed that there were unpaid property taxes and that his initial understanding pursuant to those discussions was that plaintiffs would be responsible for the back taxes on 342 and 344 S. 7th Street and defendant would pay the back taxes on the Chadwick building. Robert testified that he was not aware that there were unpaid property taxes until February 1993 and that defendant wanted to make sure that plaintiffs paid their share of the taxes after September 2. Robert offered to pay the taxes on 342 and 344 S. 7th Street from that date.

■ Although our review is *de novo*, where an issue turns upon the credibility of the witness, as it does here, we place great reliance on the trial court's determination. *Held v. Held*, 8 Or App 280, 282, 493 P2d 1388 (1972). Here the trial court found Robert's testimony to be credible. In its memorandum opinion, the trial court concluded, that

"based on my review of the evidence and a determination of the credibility of the witnesses, that at the time of the initial agreement on September 2, 1992, there had been no discussion regarding the lien of the underlying contract and hence no agreement as to any action necessary. I further conclude that there was no discussion about the fact there were past due real estate taxes owing on the properties which ultimately prevented Plaintiffs from completing the

[2] Presumably, had Kenna agreed to do that, she would have retained title to the Chadwick building property and her vendor's interest in the land sale contract for that property. The parties apparently hoped that Kenna would agree that her interest in the Chadwick building would adequately secure payment of the amounts due her under the land sale contract, making it unnecessary for her to keep as security for that obligation her interest in the property to be sold to plaintiffs.

tax lot line adjustment. The evidence indicates that some negotiations took place long after the initial agreement in an attempt to resolve the issue of payment of real property taxes."

■   Our review of the evidence accords with that conclusion. The evidence shows that the disputes over taxes and the encumbrance arose when the lot-line adjustment could not be processed because of the existence of back taxes and plaintiffs could not obtain a bank loan without a release of Kenna's interest. Defendant cannot claim that, because those issues later could not be resolved and plaintiffs tried to reach an accommodation with defendant about them, that they were material terms in the agreement from the beginning.

Defendant argues, however, that in *Genest v. John Glenn Corporation*, 298 Or 723, 696 P2d 1058 (1985), the Supreme Court refused to order specific performance of an option to purchase real property where the parties had not agreed on, *inter alia*, the type of contract to be used in the sale, the subordination of existing liens, or the obligation of the purchaser to finance the purchase price. However, *Genest* involved a complicated and protracted transaction with several written agreements and supplements, from which the court could determine material terms. It held that, although a court might be justified in making certain one or two of the things left uncertain by the parties, there were too many unresolved terms to permit specific performance. *Id*. at 744.

■■   Here, in contrast, the parties' agreement is definite enough for the court to frame a judgment to compel performance. Defendant agreed to sell the property to plaintiffs for $58,000 if plaintiffs could pay $50,000 by the following day and could obtain a lot-line adjustment. While there was no agreement as to the type of deed that would be used, in the absence of agreement on the matter, a contract to sell real property imports an agreement to convey title to the premises in fee simple. *Burns v. Witter*, 56 Or 368, 108 P 129 (1910). Defendant argues, however, that "fee simple" title can be transferred subject to liens and encumbrances. However, the parties did not agree to encumbrances, and fee simple signifies a complete title, free of any restrictions. *See Bergsvik v. Bergsvik*, 205 Or 670, 682, 291 P2d 724 (1955). On *de novo*

review, we conclude that plaintiffs are entitled to specific performance of the parties' contract.

We turn to defendant's cross-appeal. Defendant's counterclaim alleged that plaintiffs had occupied the real property since September 1992 and had refused to pay rent, for which defendant sought a judgment of $18,720. The trial court awarded defendant $12,725 for back rent, against which it offset $14,745 for the interest that plaintiffs had paid on the money that they had borrowed for the down payment. It then entered judgment in favor of plaintiffs for $2,020. Defendant argues that the court erred in awarding plaintiffs that judgment.

The court based its decision to award monetary relief to plaintiffs on its decision to deny specific performance of the contract to sell the property. Because we have concluded that plaintiffs are entitled to specific performance, we vacate the judgment and remand the parties' respective claims for rent and interest for further proceedings not inconsistent with this opinion.

On appeal, reversed and remanded with instructions to enter judgment requiring defendant to convey property to plaintiffs free of underlying taxes and the Kenna encumbrance within a reasonable time to be determined by the trial court; on cross-appeal, reversed and remanded with instructions to vacate judgment in favor of plaintiffs and for reconsideration of defendant's counterclaim.