Argued and submitted July 20, reversed and remanded for entry of judgment
granting specific performance September 13, 2006

## Billy Dean EARLS
## and Corinne Earls,
### *Appellants,*

*v.*

## Jeffrey A. CORNING,
### personal representative of the estate of
### Katherine L. Waters,
### *Respondent.*

## 04CV0104; A125858

143 P3d 243

John C. Babin argued the cause for appellants. With him on the briefs was Babin & Keusink, P.C.

Patrick R. Foley argued the cause and filed the brief for respondent.

Before Armstrong, Presiding Judge, and Linder and Rosenblum, Judges.

ROSENBLUM, J.

## ROSENBLUM, J.

Plaintiffs appeal from a judgment denying their claim for specific performance of a real estate contract.[1] The trial court concluded that the contract was not sufficiently definite because, among other things, it did not include a closing date and because the seller did not check a box indicating that she accepted plaintiffs' offer. On *de novo* review, we reverse.

We take the following facts from the record. Katherine Waters and plaintiffs Dean and Corinne Earls signed a written document entitled "OWNER'S SALE AGREEMENT AND EARNEST MONEY RECEIPT," which purported to be a contract for the sale of Waters's house to plaintiffs. The document is a preprinted form that Dean Earls filled out. Line 5 of the form allows for the inclusion of personal property in the transaction. In the space that follows, Earls wrote "NONE." In the space provided for the price, Earls wrote $180,000. Lines 8 to 12 of the form provide for payment terms. Earls noted that plaintiffs made a $1,000 earnest money payment and wrote that the balance of the purchase price was payable as "cash at close of escrow." Earls made out a check to Waters for $1,000 and gave it to her.

In the section of the form entitled "Closing," the form states, "Closing shall occur on or before _____." Earls did not fill in a date.

At the bottom of the form are signature lines for both the seller and the purchaser. Directly above the seller's signature line is a section beginning with a line stating, "SELLER'S ACCEPTANCE/REJECTION/COUNTER OFFER AND RECEIPT FOR EARNEST MONEY (COMPLETE ONE OF THE FOLLOWING TWO OPTIONS):" Each of the two options that follows begins with a check box. The first option states:

"☐ Seller accepts the Purchaser's offer and acknowledges receipt from the Purchaser of the sum of $_____ in the form of ☐ cash ☐ check ☐ promissory note payable:

---

[1] The trial court also denied plaintiffs' claims for damages. Plaintiffs do not challenge those rulings on appeal.

☐ on Seller's acceptance; or ☐ on (date) _____, as earnest money and part payment of the purchase price, which Seller will handle as provided above. Seller acknowledges receipt of an executed copy of this contract, which Seller has read and understands."

The second option states:

"☐ Seller rejects Purchaser's offer and (check if applicable) ☐ makes the attached counter offer."

In the lines describing the first option, Earls wrote "1000.00" in the space for the amount of the earnest money payment, checked the boxes next to "check" and "on (date)," and wrote "August 11, 2003," in the space for the date. Waters did not check the box indicating that she accepted the offer. However, she signed the form on the appropriate line, as did both plaintiffs. She also endorsed the earnest money check.

Two days later, Earls took the written agreement to his mortgage broker and initiated the loan application process. He also opened an escrow account with a local title company.

On August 17, 2003, six days after plaintiffs and Waters signed the sales agreement, Waters died. Earls instructed his mortgage broker to put the loan application on hold, which she did. Waters was not survived by any relatives, so Earls was appointed as a special administrator to find her will and to make funeral arrangements. While searching Waters's house for the will, Earls discovered that Waters had kept extensive diaries, which included entries reflecting the sale agreement. The entry for July 6 stated, "Dean made an offer on the house. Think I'll take it at 175." The July 29 entry read, "Dean has bought my house if he can get the loan, $180,000." The entry for August 3 read, "Dean and wife came over. They have bought the house." The entry for August 11, the day that they signed the sale agreement, stated, "Dean and his wife came over, filled out a deposit slip and a check."

Defendant was appointed as personal representative of Waters's estate. For reasons that are not material to

our analysis, defendant decided not to honor the sale agreement. Plaintiffs brought this action seeking specific performance of the written agreement. At trial, Earls testified about how he and Waters had reached the agreement. He stated that he had initially made an oral offer of $175,000 for the real property and that Waters had orally accepted. He stated further that, shortly thereafter, Waters, who was an elderly widow, mentioned to him that she was going to have a yard sale to dispose of some of her personal property because she intended to move into a smaller house or an apartment. Earls testified that he proposed that Waters take whatever personal property she wanted when she moved and simply leave the rest for plaintiffs in exchange for increasing the purchase price of the house to $180,000. According to Earls, Waters responded, "You've got a deal."

Earls stated that he had purchased the sale agreement form after his mortgage broker informed him that lenders would not finance a sale of real estate without a written agreement. He explained that he had written "NONE" in the space on the form for personal property to be included in the transaction "just to keep this simple, to satisfy the lenders," because Waters did not know what property she would be leaving in the house.

Earls also testified that he had left the space for the closing date blank because Waters had not yet found a new residence. He stated that he and his wife were not in a hurry to take possession of the house, so they agreed with Waters that they would close the transaction after Waters found a new home and moved.

Plaintiffs' attorney addressed the fact that Waters had not checked the box on the written agreement indicating that she had accepted the offer by asking Earls what, if anything, Waters had done that indicated her acceptance of the agreement. Earls responded, "She said that she was happy that us kids were going to be buying her house. She signed the agreement."

After the parties had given their evidence, the court made oral findings and announced its decision. It ruled that it could not specifically enforce the agreement, in part because, to do so, it would

"have to decide what the purchase price was. Was it 175 with no personal property? Was it 180 with no personal property? Was it 175 with one half of the personal property? In other words, what was that $5,000 for? It just — It can't be enforced, and the death of Ms. Waters then left it wide open."

The court entered a judgment denying plaintiffs' claims. In the judgment, it made the following written findings of fact:

"1.    There were three incomplete agreements between Plaintiffs and Decedent.

"2.    None of the agreements were consistent with any of the other agreements.

"3.    The written agreement did not contain a date for performance or the acceptance of the offer by Decedent. It referred to a sale of the residence for $180,000 without any personal property.

"4.    Plaintiff testified that the agreement with Decedent included some personal property. The items of personal property would be agreed upon at a later date.

"5.    The vague and incomplete agreements presented to the court contain too many missing necessary elements to be specifically enforceable."

The judgment also included the court's conclusion that "[t]he document purported by Plaintiffs to be a contract for purchase of real property owned by the Estate of Katherine L. Waters does not meet the legal requirements for a contract and is not enforceable."

■          On appeal, plaintiffs argue that the trial court erred in concluding that the written agreement did not meet the legal requirements for a contract. Specifically, they challenge the court's findings that there were three incomplete agreements and that the agreements were missing too many necessary elements to be enforced. They argue that, although Waters did not check the box indicating her acceptance of the offer, the evidence in the record shows that she accepted it. They also argue that the lack of a specific closing date is not fatal to the agreement. Finally, they contend that the trial court inappropriately made an issue of the subject matter of the agreement when it concluded that, in order to specifically

enforce the agreement, it would have to determine what the purchase price was and what property was to be included. Plaintiffs assert that they did not plead, and were not seeking to prove, a right to any of Waters's personal property.

■    Defendant responds that plaintiffs were not entitled to specific performance because the written agreement was not definite and certain in all material respects. Specifically, defendant asserts that the trial court could not identify the property to be conveyed, arguing that plaintiffs "always communicated to everyone other than the deceased that the extra $5,000" added to the purchase price was consideration for Waters's personal property. Defendant also argues that the time fixed for closing had never been agreed to by the parties.[2] In support of that argument, defendant relies on *Povey v. Clow*, 146 Or App 760, 764, 934 P2d 528 (1997), in which we stated, "In every agreement for the sale of land, the essential terms include the designation of the parties, the identification of the property, the promise to sell and buy, the purchase price and how it will be paid, and a fixed time and place for the delivery of the deed or 'closing.' " (Citing *Ochs v. Albin*, 137 Or App 213, 218, 903 P2d 906 (1995).) *See also Lang v. Oregon-Idaho Annual Conference*, 173 Or App 389, 397, 21 P3d 1116 (2001) (citing *Povey* for the same proposition).

■    To be subject to specific performance, a contract must be definite in all material respects, with nothing left to future negotiations. *Phillips v. Johnson*, 266 Or 544, 556, 514 P2d 1337 (1973); *see also id.* (noting that the rule applies in actions "for specific performance of contracts for the sale of land"). As noted, the trial court found the following terms to be indefinite: the identification of the property, the purchase price, the promise to sell, and the time for closing. We begin with the identification of the property and the purchase price.

We agree with plaintiffs that the trial court erred in concluding that it could not identify the subject matter of the

---

[2] Defendant also asserts that a letter he received from plaintiffs' attorney before this action was initiated attempted to make the sale contingent on plaintiffs selling their current residence. Defendant does not explain how that fact makes the written agreement indefinite. Moreover, plaintiffs do not argue on appeal that the agreement included such a provision. They merely ask us to order specific performance within 60 days, with no contingencies. We do not consider defendant's assertion any further.

contract or, consequently, the price. Neither of those terms are properly at issue in this case. In their complaint, plaintiffs sought specific performance of the written agreement only; they asserted no contractual right to any of Waters's personal property. And in his opening statement at trial, plaintiffs' attorney specifically told the court that, although there would be evidence that plaintiffs had believed that they would receive some personal property in the transaction, they acknowledged that the written agreement unambiguously excluded such property and, thus, "the claim that we're presenting does not include a claim for the personal property. It includes a claim strictly for the real estate at $180,000." Clearly, plaintiffs were not asking for enforcement of any oral agreement, and they were not seeking reformation of the written agreement. Thus framed, the issues in this case are limited to the meaning and validity of the written agreement. That document unambiguously states that the contract is for the real property only and that the agreed price is $180,000.[3] Those terms of the contract are definite.

■ We turn next to the promise to sell. As noted, plaintiffs argue that the evidence shows that Waters intended to accept their offer.[4] We agree. Although she did not check the box on the form indicating acceptance, her statement to plaintiffs that she was happy that they were buying the house, the notations in her diary, and the fact that she signed the agreement and endorsed the earnest money check establish that she unequivocally accepted plaintiffs' offer. *Cf. Lang*, 173 Or App at 395 (testimony that a written offer was orally accepted was admissible to show the existence of a contract).

■ We turn finally to the time for closing. As noted, the Supreme Court held in *Phillips* that a contract must be definite in all material respects if it is to be specifically enforced,

---

[3] It is noteworthy that, of the three purported agreements, plaintiffs are seeking specific performance of the one whose terms are least favorable to them. This is not a case in which one party to a contract is attempting to enforce a writing with terms more favorable to that party when evidence suggests that the writing was not intended to reflect the parties' final agreement and that the actual agreement was more favorable to the other party. *See Bennett v. Pratt*, 228 Or 474, 493, 365 P2d 622 (1961) ("The statute of frauds was never designed to shield against the perpetration of a fraud.").

[4] Defendant does not argue on appeal that Waters did not accept plaintiffs' offer.

and we have stated that "a fixed time and place for the delivery of the deed or 'closing' " is an essential term of a land sale contract. However, in *Howard v. Thomas*, 270 Or 6, 13, 526 P2d 552 (1974), the Supreme Court stated that its holding in *Phillips* is subject to an exception. Quoting Samuel Williston, 11 *Williston on Contracts* § 1424, 814 (3d ed 1957), the court stated, " 'If there is sufficient intent expressed to make a legally valid contract, a court of equity can make certain by its decree, within reasonable limits, subordinate details of performance which the contract itself does not state.' " The court did not explain what it meant by "subordinate details." However, although the court did not quote Williston further in *Howard*, Williston's very next sentence is, "Thus, where no time of performance is stated in the contract, the court may by its decree fix a reasonable time[.]" *Williston on Contracts* § 1424 at 814-15.

The same proposition appears in Milton R. Friedman, 1 *Contracts and Conveyances of Real Property* § 1.2(b) (5th ed 1991), on which we relied in *Ochs* and *Povey*. Neither of those cases—nor *Lang*, which relied on *Povey*—involved an omitted closing date, so we were not required to expound on the *implications* of the closing time being an "essential term," as is necessary in this case. Although Friedman states that the time for closing is an essential term, he goes on to explain that some "missing essentials may be established by presumption of law. The time for closing title, if omitted, will be fixed by a court at a reasonable time." *Id.* § 1.3 at 131. For the reasons that follow, we concur in that proposition.

■   We acknowledge that the Supreme Court has retreated somewhat from the exception stated in *Howard*. *See Booras v. Uyeda*, 295 Or 181, 193, 666 P2d 791 (1983) ("A court of equity cannot, under the guise of 'filling gaps' make the contract which it thinks the parties would have agreed to. The court can only enforce an existing agreement which is so definite in its terms that the court can frame a decree to compel performance." (Citation omitted.)); *see also Genest v. John Glenn Corporation*, 298 Or 723, 739, 743-44, 696 P2d 1058 (1985) (explaining that *Howard* had announced a "less restrictive rule" and implying that *Booras* was intended to limit *Howard*). Nevertheless, Williston's and Friedman's observations are consistent with the court's earlier case law.

In *Sexton v. Berenson*, 186 Or 122, 125, 205 P2d 146 (1949), the court held that "[a]n agreement for the sale of land implies a reasonable time for performance where no time for performance is specified." Nothing the court has said since indicates that the holding in *Sexton* is no longer good law.

■ In light of *Sexton*, we conclude that, if the parties to a real estate sale contract omit the closing date from the written agreement, a court is to allow a reasonable time for performance. Accordingly, we next consider what constitutes a reasonable time in this case. A later edition of Williston's treatise provides guidance: "Where the court fixes a reasonable time, what constitutes a reasonable time is dependent upon the facts and circumstances of the particular performance, the parties, and the contract's other terms, as well as other pertinent circumstances." Samuel Williston, 25 *A Treatise on the Law of Contracts* § 67:6, 203 (4th ed 2002).

The pertinent circumstances in this case are straightforward. Evidence in the record indicates that, when plaintiffs and Waters signed the sale agreement, they contemplated that plaintiffs would obtain a mortgage from a third-party lender and pay Waters in cash. Plaintiffs point to the testimony of their mortgage broker, who indicated that, at that time, financing for the purchase of Waters's house could be arranged in approximately 30 to 40 days. Defendant's only obligations, as Waters's successor under the contract, are to remove any personal property that might remain in the house and to transfer title to the real property to plaintiffs. Plaintiffs request that we order specific performance within 60 days. We agree with plaintiffs that, under the circumstances, 60 days is a reasonable amount of time to perform the agreement.

In sum, the terms of the written agreement that plaintiffs entered into with Waters are sufficiently definite to be specifically enforceable. The parties shall have 60 days from the date of this opinion to close the transaction.

Reversed and remanded for entry of judgment granting specific performance.