Argued and submitted December 7, 1998, reversed and remanded in part;
otherwise affirmed July 7, 1999

# Glen WAGNER
## and Bonnie Wagner,
### *Respondents,*

*v.*

## Theodore R. McNEELY,
### *Appellant.*
## (96 CV 0525; CA A100217)

984 P2d 943

Margaret H. Leek Leiberan argued the cause and filed the briefs for appellant.

Roger Gould argued the cause and filed the brief for respondents.

Before Edmonds, Presiding Judge,* and Deits, Chief Judge, and Armstrong, Judge.

DEITS, C. J.

---

* Edmonds, P. J., *vice* Warren, P. J., retired.

## DEITS, C. J.

Defendant appeals from the judgment for plaintiffs in this action for the price under a written contract whereby plaintiffs sold and defendant agreed to buy, cut and remove timber from plaintiffs' property. We affirm in part and reverse in part.

The contract was entered into on July 6, 1995, and was for a "lump sum timber sale" by which defendant agreed to pay plaintiffs $250,000 regardless of the volume of timber that was present in the area or that defendant actually removed. The estimated volume of merchantable logs and other "covered products" in the area was 780,000 board feet. In fact, the area contained less than one-half that amount. The 780,000 board-feet estimate was based on a cruise that was conducted by an agent of plaintiffs, and the estimated volume was set forth in the contract. The contract added, however:

> "Seller in no way represents, warrants or guarantees such amount. Buyer has inspected the Contract Area and acknowledges that the actual volume of Covered Products may be more or less than the estimated volume. Buyer acknowledges he has completely inspected the above described Contract Area and is satisfied as to its boundaries and Covered Products located thereon."

Defendant nevertheless contends that plaintiffs misrepresented the volume of timber to him in their negotiations. He did not conduct a cruise or attempt in any other way to make an independent assessment of the volume, despite the fact that he repeatedly expressed concerns about the amount of timber during the negotiation process.

The $250,000 price was to be paid in three installments that were tied to specific events in the contracting and performance process. The contract also provided, however, that the "total purchase price shall be paid in full, not later than August 25, 1996, whether or not timber is cut on the premises." The contract also contained the following provision:

> "In the event Buyer does not remove any or all Covered Products from the Contract Area for any reason other than

'cause or causes beyond Buyer's control,' on [September 15, 1996,] or upon termination of this Agreement, the Covered Products shall revert to, revest in and thereafter be the absolute property of Seller without compensation to Buyer and Buyer shall have no further right, title, or interest therein, unless otherwise agreed upon by the parties. Seller may treat such non-performance as a default and breach of contract and may elect to resell the Covered Products."

While logging the timber, defendant discovered that the volume was substantially less than the anticipated amount. He had paid two of the installments required by the contract, but he did not make the final payment. Defendant ceased his logging operations under the contract at the end of the 1995 cutting season, although approximately 25,000 board feet of timber still remained in the contract area. The exact circumstances under which defendant discontinued his performance are disputed and are the subject of one of the arguments that defendant makes but that we find unnecessary to address specifically.

Plaintiffs brought this action, seeking the unpaid balance of the contract price. Defendant filed affirmative defenses and counterclaims, alleging variously that plaintiffs had committed fraud or made reckless misrepresentations concerning the amount of timber; that defendant was entitled to a credit for the merchantable timber remaining on the property; and that defendant was also entitled to a $2,500 set off for building fire trails on plaintiffs' property pursuant to an alleged oral agreement ancillary to the written contract.

The trial court granted plaintiffs' motions to strike or for a directed verdict on defendant's defenses and counterclaims. With the elimination of the defenses and counterclaims, there was no remaining issue as to defendant's liability for the balance of the purchase price, and the court granted plaintiffs a directed verdict on their claim and entered judgment in their favor. The trial court also awarded plaintiffs contractual attorney fees and costs, including an enhanced prevailing party fee of $5,000, based on the court's findings that defendant's defenses were not objectively reasonable and that the enhanced award would serve a deterrent purpose. ORS 20.190(3)(b), (d).

██      Defendant appeals. He advances six assignments of error and a variety of supporting arguments. With three exceptions, his arguments require no discussion except to note that his fraud and misrepresentation claims and defenses are defeated by the express disclaimer of representations or guarantees of the estimated volume in the negotiated arm's-length contract between the parties.

██      The first of defendant's three arguments that requires more extensive discussion is his contention that the trial court erred by directing a verdict against him on his counterclaim for an offset of $2,500 for his services in constructing the fire trails. A provision regarding the construction of the trails had been included in one of the proposed drafts of the written contract during the negotiation process. The provision was deleted at defendant's instance, but he argues that the parties nevertheless arrived at an oral agreement that gave him a unilateral option to perform and obligated plaintiffs to pay him $2,500 in the event that he constructed the trails. There appears to be no dispute that defendant constructed the trails on plaintiffs' property. However, the parties disagree about whether there was evidence from which the trier of fact could find that an oral agreement had been reached. Defendant relies on his testimony:

"Q.   And what was your understanding of that [discussion]?

"A.   That meant that if we would build the fire trail, that we would receive [a] $2,500 credit from the purchase price.

"Q.   And did you did you discuss—did you think about that?

"A.   I didn't want to—we crossed it out of the contract, and left it out of the contract because I wasn't sure—not having been over the area extensively, I didn't know what it entailed. I didn't know what kind of rough ground situations there were. So I told him that I'd have to look. *And I left myself the option to decline from doing it. But if I didn't—but if I wanted to accept it, I could just accept that part of it.*

"Q.   Did you then consider undertaking the fire trail work?

"A.   Yes.

"Q.   And what was your decision?

"A.   I looked at it and it didn't look too bad, and so we built the fire trails." (Emphasis added.)

In response, plaintiffs rely on the first of the sentences we have emphasized in our quotation from the testimony and argue that, "[b]y his own testimony, defendant did not want to be obligated to build the fire trail. His counterclaim alleges existence of an express contract yet by his testimony defendant denied a contract existed." Plaintiffs make no reference to the second of the emphasized sentences in that quotation. We conclude that, when the second sentence is considered and when the quoted passage from defendant's testimony is viewed in its entirety, it was sufficient to permit a factfinder to find that the parties orally agreed to a unilateral contract. *See, e.g., Killam v. Tenney,* 229 Or 134, 366 P2d 739 (1961). The trial court erred by granting a directed verdict for plaintiffs on the counterclaim.[1]

■   Defendant also contends that the court erred by directing a verdict against him on his counterclaim for the value of the timber that remained on plaintiffs' property after the performance of the contract ceased. ORS 72.7090 provides, in relevant part:

"(1)   When the buyer fails to pay the price as it becomes due the seller may recover, together with any incidental damages under ORS 72.7100, the price:

"(a)   Of goods accepted or of conforming goods lost or damaged within a commercially reasonable time after risk of their loss has passed to the buyer; and

"(b)   Of goods identified to the contract if the seller is unable after reasonable effort to resell them at a reasonable price or the circumstances reasonably indicate that such effort will be unavailing.

"(2)   Where the seller sues for the price the seller must hold for the buyer any goods which have been identified to the contract and are still in the control of the seller except

---

[1] Plaintiffs' only argument regarding this assignment of error is that the evidence was insufficient to prove the existence of the oral agreement.

that if resale becomes possible the seller may resell them at any time prior to the collection of the judgment. The net proceeds of any such resale must be credited to the buyer and payment of the judgment entitles the buyer to any goods not resold."

ORS 72.7190 provides, as material:

"(1) Subject to the provisions of subsections (2) and (3) of this section and of ORS 72.7180 on liquidation and limitation of damages:

"(a) The agreement may provide for remedies in addition to or in substitution for those provided in ORS 72.1010 to 72.7250 and may limit or alter the measure of damages recoverable under ORS 72.1010 to 72.7250, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts; and

"(b) Resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.

"(2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in the Uniform Commercial Code."

As indicated above, the written contract contains the provision that any timber remaining on the property after the cessation of defendant's performance is to revert to plaintiffs, free of any interest of defendant's. However, that provision is at variance with ORS 72.7090(2), under which a seller who sues for the price must hold residual goods identified in the contract for the benefit of the buyer or transmit the proceeds of any resale to the buyer. Plaintiffs argue that the provision is nevertheless permissible under ORS 72.7190 as a remedy "in addition to or in substitution for" the remedy provided by ORS 72.7090. Defendant answers that the alternative contractual remedies that are authorized by ORS 72.7190 do not extend to damages that are "specifically prohibited by the [Uniform Commercial Code (UCC)]." Defendant understands the remedy in question to be specifically prohibited by ORS 72.7090, under which the seller *must* hold the goods for the buyer or tender the proceeds of a resale to the buyer when the seller pursues an action for the price.

Defendant also claims contextual support for his position in ORS 71.1060, which provides generally that the UCC's remedies shall be administered "to the end that the aggrieved party may be put in as good a position as if the other party had fully performed[.]" According to defendant, the reverter provision is contrary to that objective, because it provides plaintiffs with a "windfall"—the value of the remaining goods—over and above the full payment of the price to which they are entitled for all of the goods under the contract.

As far as we find, the question defendant presents has not been squarely answered by any reported decision in this state or elsewhere. Although defendant's argument has a facial allure, the fact remains that ORS 72.7190 expressly allows the parties, by contract, to add to or supplant the remedies and to limit or alter the damages for which the UCC sections it enumerates—including ORS 72.7090—provide. Defendant does not argue that the reverter provision is unconscionable or that it "fails of its essential purpose." Rather, his argument is based entirely on statutory construction principles and posits that a contractual remedy under ORS 72.7190 may *never* modify the provisions of ORS 72.7090 on which he relies. Hence, the argument is somewhat circular. Notwithstanding that ORS 72.7190 allows the parties to alter or replace the remedies of ORS 72.7090 and other statutes by contract, defendant maintains that the reverter provision of this contract is not permitted by ORS 72.7190 because it is inconsistent with ORS 72.7090.

The argument is nevertheless a colorable one in that, as defendant asserts, a reverter provision like this essentially gives a "windfall" to a seller who successfully sues the buyer for the price *and* retains the goods, which is arguably contrary to the UCC's remedial objective of making the parties whole. ORS 71.1060. However, there is other "statutory context" that is also relevant here. One of the UCC's stated purposes is to "permit the continued expansion of commercial practices through custom, usage and agreement of the parties[.]" ORS 71.1020(2)(b). Reverter or "forfeiture" provisions of the kind in question, whereby the seller reacquires all interest in timber or other crop-type goods remaining on the seller's property at termination *and* retains the right to the full contract price, have been repeatedly upheld

by the Oregon Supreme Court. *Dunham et ux v. Taylor et al*, 211 Or 618, 625-26, 317 P2d 926 (1957), and cases cited therein; *see also Jackson County v. Compton*, 289 Or 21, 609 P2d 1293 (1980). Those cases illustrate a custom or usage in timber sale and other similar contracts. We decline to hold that reverter provisions like the one in question are outside the scope of the contractual remedies that ORS 72.7190 permits, at least in contracts for the removal and sale of timber on the sellers' land where no *particularized* showing of unconscionability or failure of essential purpose is made.[2]

Defendant's other argument that calls for discussion is that the trial court abused its discretion by awarding the enhanced $5,000 prevailing party fee against him. The awards of costs and attorney fees are vacated automatically by our disposition of the appeal. We nevertheless note that the fact that we have reversed the judgment against defendant on one of his counterclaims, and have also found more merit than the trial court apparently did in the argument that he makes in support of one of his others, should receive appropriate consideration by the trial court in any assessment of the objective reasonableness of defendant's claims and defenses that may be called for on remand.

Judgment for plaintiffs on defendant's second counterclaim in second amended answer reversed and remanded; otherwise affirmed.

---

[2] Given the basis for our holding, we do not decide whether defendant's argument concerning the relationship of ORS 72.7090 and ORS 72.7190 would be correct in connection with sales contracts of a kind other than the one in question.