Argued and submitted July 22, judgment on specific performance claim reversed and remanded; enhanced prevailing party fee vacated; otherwise affirmed on appeal and cross-appeal November 26, 2003

In the Matter of the Estate of
Gerald G. Zimmer, Deceased.

Kim JOHNSTONE
and Stephanie Knufman,
*Appellants - Cross-Respondents,*

*v.*

Patricia ZIMMER,
Personal Representative of the Estate of
Gerald G. Zimmer,
*Respondent - Cross-Appellant.*

00-PB-0073-MA; A119096

81 P3d 92

Steven K. Chappell argued the cause and filed the briefs for appellants - cross-respondents.

Bruce J. Brothers argued the cause for respondent - cross-appellant. With him on the brief were Lawrence M. Gorman and Bruce J. Brothers & Associates.

Before Edmonds, Presiding Judge, and Deits, Chief Judge,* and Schuman, Judge.

EDMONDS, P. J.

---

* Deits, C. J., *vice* Kistler, J., resigned.

.

## EDMONDS, P. J.

Petitioners appeal a grant of summary judgment in favor of respondent Patricia Zimmer, the personal representative of the estate of Gerald G. Zimmer (decedent), on petitioners' will contest and settlement enforcement claims. ORCP 47 C. Petitioners also appeal the trial court's award of a $5,000 enhanced prevailing party fee to respondent. Respondent cross-appeals the trial court's judgment denying her attorney fees. We affirm on the will contest claim, reverse on the settlement enforcement claim, and remand.

Because petitioners' appeal results from respondent's summary judgment motion, we state the facts in a light most favorable to petitioners. *Lang v. Oregon-Idaho Annual Conference*, 173 Or App 389, 391, 21 P3d 1116 (2001). In March 1994, decedent executed a will leaving his entire estate to respondent, his wife in 1994 and at the time of his death. In May 2000, decedent died. His estate was probated both in Iowa and Oregon. After decedent's death, his March 1994 will could not be located. In August 2000, respondent petitioned the court to be appointed personal representative of decedent's estate. In her petition, she submitted a reconstructed version of decedent's will. The reconstructed will named respondent as personal representative and left decedent's entire net estate to her. The trial court admitted the reconstructed will to probate and appointed respondent as personal representative of decedent's estate.

In November 2000, petitioners Kim Johnstone and Stephanie Knufman, daughters of decedent from a previous marriage, filed a petition to contest the will. Petitioners argued that the March 1994 will was invalid. They asserted two theories to support their position. The first was that the March 1994 was an invalid holographic will. The second was that decedent revoked his March 1994 will before his death. Petitioners requested that the trial court declare the March 1994 will invalid and that decedent died intestate. Petitioners also asked the court to determine that each of them was entitled to a 10 percent share of decedent's intestate assets.[1]

---

[1] In addition to petitioners, decedent had three daughters with respondent. In Oregon, a spouse is entitled to one half of a decedent's assets if there are surviving

In November 2000, respondent filed a petition seeking support as the surviving spouse. She requested $5,000 a month from the estate. Petitioners filed an objection to the petition for support, claiming that the requested amount was excessive and would unfairly diminish the distributive assets of the estate. The court granted support to respondent at a January 5, 2001, hearing, but petitioners moved to terminate that order when they learned that respondent had remarried. A hearing on the motion to terminate support was scheduled for March 15, 2001.

On March 13, 2001, respondent telephoned petitioner Johnstone to discuss the possibility of settling petitioners' claims against the estate without further litigation. Before March 13, petitioners had tried, without success, to get information from respondent and her attorney about the assets and the debts of the estate. In the March 13 telephone conversation, respondent offered to settle if petitioners would each accept 10 percent of decedent's estate in exchange for an end to the litigation. Johnstone orally accepted the offer. In her affidavit and deposition testimony in opposition to respondent's motion for summary judgment, Johnstone averred that the parties agreed that their attorneys would get together and prepare documents necessary for the agreement. She also asserted that respondent agreed to give the attorneys information about the assets and liabilities of the estate. According to Johnstone, she and respondent did not specifically discuss the subjects of support payments to respondent from the estate, the estate's attorney fees, the personal representative's fees, the accountant's fees, or the ownership of the furnishings in decedent and respondent's residence. In contrast, respondent averred in her summary judgment proceeding affidavit that she believed that the phone conversation settled petitioners' request for documentation and that their agreement was to conclude "the estate accounting in the ordinary course."

Following the phone conversation with respondent, Johnstone contacted petitioners' attorney with news of the

---

issue who are not issue of the surviving spouse. ORS 112.025(2). The children of the decedent share equally in the portion of decedent's assets not awarded to his surviving spouse. ORS 112.045(1). In this case, an intestate share of the estate for each of the five children is 10 percent of the estate, leaving 50 percent for respondent.

settlement. In response, petitioners' attorney sent a fax on March 13 to respondent's attorney informing him that the 10 percent share of the estate to each petitioner was "acceptable" to both petitioners. The fax also stated that, while the 10 percent share was acceptable, the parties would still need to identify and to value the estate's assets and determine its debts as well as to address the spousal support issue and the personal representative's fees. The fax requested opposing counsel to "confirm the settlement posture of this case" and to discuss how to address the issues identified in the fax in order to "finalize a settlement agreement." Opposing counsel responded with a fax noting that he thought the parties "can work out any issues."

Following the March 13 events, the support hearing scheduled for March 15 was cancelled. On March 29, the attorneys for the parties met at respondent's attorney's office to review documents that had been prepared to finalize the settlement. However, at that meeting, petitioners came to believe that the documentation provided by respondent as to the assets of the estate was incomplete, and they made additional requests for information. On March 30, respondent's attorney objected to petitioners' requests for more information. Respondent's attorney also invited petitioners to make a settlement offer. Using the financial information they had regarding the estate, petitioners submitted a settlement offer where each petitioner would receive $85,000. In addition, petitioners would each get a valuable automobile from the estate. Petitioners believed that the $85,000 plus the value of the automobile amounted to 10 percent of the estate. The offer was sent by fax to respondent's attorney on April 6. Respondent did not respond to petitioners' April 6 offer.

Either on March 28, 2001, or April 8, 2001, respondent found decedent's lost will. The will left all of decedent's assets to respondent, but it did not designate respondent as the personal representative. On April 10, respondent's attorney gave a copy of the will to petitioners' attorney. The lost will was admitted to probate on April 30. In response, petitioners amended their petition contesting the will. They alleged that the will was invalid because decedent lacked the capacity to execute the will and that the will had been

revoked by a subsequent will. Petitioners also sought specific performance of the March 13 settlement agreement.

Respondent argued in her response to the amended petition that no settlement had ever been reached. She also asserted that petitioners' will contest was "frivolous, without any factual basis and intended only to cause Personal Representative to give them money to which they are not entitled * * *." She asked, therefore, for an award of $25,000 in attorney fees against petitioners. In addition, respondent also moved for summary judgment. The trial court granted summary judgment to respondent on both petitioners' will contest claim and petitioners' request for specific performance of the settlement agreement. It denied respondent's request for attorney fees but awarded her an enhanced prevailing party fee of $5,000 based on its finding that, after the original will was discovered, petitioners did not have "an objectively reasonable basis for continuing to pursue their claims." Petitioners appeal from the resulting judgment, and respondent cross-appeals from the denial of attorney fees.

On appeal, petitioners argue that there are genuine issues of material fact in the summary judgment evidentiary record that preclude summary judgment on their will contest claim. They also argue that the same record demonstrates, as a matter of law, that the parties entered into an enforceable settlement agreement. Finally, petitioners assert that they pursued their claims in an objectively reasonable manner and that the trial court erred in awarding an enhanced prevailing party fee to respondent. Respondent counters that, after the March 1994 will was found, petitioners presented no evidence that decedent had executed a subsequent will, nor did they produce any evidence regarding the contents of such a will. As to the specific performance claim, respondent argues that, after she made her offer to petitioners, they made additional demands to which she did not agree in the initial discussion with Johnstone. She asserts that the parties never reached an enforceable agreement. Respondent also defends the trial court's award of an enhanced prevailing party fee by pointing out that petitioners filed their original will contest based on the premise that the lost will was revoked.

We first address petitioners' will contest claim. ORS 113.075 provides specific grounds upon which a person may contest a will:

> "(1)   Any interested person may contest the probate of the will or the validity of the will or assert an interest in the estate for the reason that:
>
> "(a)   The will alleged in the petition to be the will of the decedent is ineffective in whole or part;
>
> "(b)   There exists a will that has not been alleged in the petition to be the will of the decedent; or
>
> "(c)   The decedent agreed, promised or represented that the decedent would make or revoke a will or devise, or not revoke a will or devise, or die intestate."

Petitioners argue that decedent's March 1994 will is invalid because he executed a subsequent will revoking it.[2] In support of their argument, they presented evidence that showed that decedent and respondent had marital difficulties. They also presented evidence that decedent had told people other than respondent that he was going to leave them some assets from his estate and that he had revoked respondent's right of survivorship from some property that he and respondent held together jointly. Petitioners argue that those actions and statements are inconsistent with the terms of the March 1994 will and, therefore, lead to the reasonable inference that decedent executed another will that was either destroyed by respondent or has yet to be found.

Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. ORCP 47 C. All reasonable inferences must be drawn in favor of the party opposing the motion. *Uihlein v. Albertson's, Inc.*, 282 Or 631, 634, 580 P2d 1014 (1978). Here, the question is whether there exists a reasonable inference from the evidence submitted by petitioners that would permit petitioners to prevail legally if the issue of whether decedent executed a subsequent will were to be tried.

---

[2] Petitioners abandoned their lack of capacity claim at hearing. The final judgment disposed of that claim in favor of respondent. Petitioners make no assignment of error regarding that disposition on appeal.

The question of when a subsequent will revokes a prior will by operation of law is governed by statute. ORS 112.275 provides that "[a] will may be revoked or altered only as provided in ORS 112.285 to 112.315." Only ORS 112.285 is applicable to the facts of this case. It provides:

"(1)   A will may be revoked or altered by another will.

"(2)   A will may be revoked by being burned, torn, canceled, obliterated or destroyed, with the intent and purpose of the testator of revoking the will, by the testator, or by another person at the direction of the testator and in the presence of the testator. The injury or destruction by a person other than the testator at the direction and in the presence of the testator shall be proved by at least two witnesses."

While it is reasonably inferable from the evidence relied on by petitioners that decedent intended to revise the 1994 will, they offered no evidence that complies with the requirements of ORS 112.285 and demonstrates that decedent actually executed another will. The Supreme Court considered a similar dispute in *Melhase v. Melhase*, 87 Or 590, 171 P 216 (1918). In *Melhase*, the evidence presented consisted of the testimony of attorneys and witnesses regarding the execution of a new will by the decedent. 87 Or at 594-600. Their testimony included the approximate date of the execution of the will, where the execution occurred, and the recollection that the new will contained the "usual clause revoking all prior wills and codicils."[3] *Id.* at 598, 600-01. In contrast, the affidavits and deposition testimony submitted at summary judgment by petitioners do not permit a reasonable inference that decedent ever *acted* on his expressed intentions. Therefore, the trial court correctly granted summary judgment on petitioners' will contest claim.

■    We turn next to the grant of summary judgment to respondent on petitioners' specific performance claim. "To be

---

[3] The decision in *Melhase* is in accordance with the general rule that "[i]f it is claimed that a will is revoked by a later will which cannot be found, it is said that the execution of such later will must be proved as if it were a lost will; and the fact that such later will contained an express revocation clause, or that it was so inconsistent with the earlier will as to revoke it, must also be proved." William J. Bowe and Douglas H. Parker, 3 *Revised Treatise: Page on the Law of Wills* § 26.105, 227 (3d ed 1961).

entitled to specific performance, a contract must be definite in all material aspects, with nothing left to future negotiation" except details of performance that are subordinate to the material terms. *Povey v. Clow*, 146 Or App 760, 763-64, 934 P2d 528 (1997). No party to a contract will be required to perform additional, material terms to which the party did not either explicitly or implicitly agree. On the other hand, no party to a contract should be permitted to avoid contractual duties merely because the language used to express the agreement is less complete than a careful lawyer would employ. Essentially, the governing standard is "one of substantial fairness to both parties." *Van v. Fox*, 278 Or 439, 446, 564 P2d 695 (1977). Thus, summary judgment on a specific performance claim under ORCP 47 will be precluded when the evidence permits a reasonable factfinder to find either that all material terms had or had not been agreed on. *Lang*, 173 Or App at 398. A term is "material" to an enforceable agreement when it goes to the substance of the contract and, if breached, defeats the object of the parties in entering into the agreement. *Crain v. Siegel*, 151 Or App 567, 572, 950 P2d 382 (1997). Whether a breach is material is a question for the factfinder unless the uncontested evidence leads to only one legal conclusion. *Commerce Mortgage Co. v. Industrial Park Co.*, 101 Or App 345, 349, 791 P2d 132, *adh'd to as modified on recons*, 102 Or App 284, 793 P2d 894 (1990), *rev den*, 311 Or 87 (1991). We apply those principles in the analysis that follows.

In support of their claim that issues of fact exist about whether the parties entered into a enforceable agreement as the result of their telephone conversation, petitioners presented evidence in affidavit and deposition testimony that on March 13 the parties agreed that petitioners would each receive 10 percent of decedent's intestate estate in Oregon and Iowa as well as access to the documents necessary accurately to determine "what the 10 percent was." Petitioners averred that, in return, they agreed not to contest the request by respondent for support or the probate of the 1994 will, and they agreed to the sale of the Iowa property. Petitioners characterize the items listed in their attorney's fax as issues necessary to reduce the agreed-upon 10 percent of the net estate term to a dollar figure. That view is consistent with

the exchange of written communication between the parties' attorneys following the phone call. Those exchanges presume, in accordance with the probate statutes, that the 10 percent shares would be reduced, in some manner, by decedent's debts, spousal support, and fees necessary to the administration of the estate.

In contrast, respondent averred in the summary judgment proceeding that she believed from her conversation with Johnstone that the estate's final accounts would determine the value of the net estate and that no more documentation would be required of her or her attorney. She testified in her deposition that, following the March 29 meeting of their attorneys, she thought the parties could wrap up the settlement to which they had agreed in their phone conversation. However, as the demands for documentation continued, respondent changed her belief. She characterizes the listed items in the April 6 fax as a refusal of her offer and as the making of additional demands to which she never agreed.

The object of the parties' purported agreement on March 13 was to settle the pending litigation. The *quid pro quo* for a termination of petitioners' pending claims and their objection to support was that each of them would receive 10 percent of the net estate. While it is obvious that the parties contemplated that some expenses of the estate were to be paid before the 10 percent amount was calculated, there is a conflict in evidence about the parties' understanding of the process used to determine the net estate. Petitioners testified and averred that the parties agreed that their attorneys would review the documentation in order to determine the assets of the estate. Respondent averred that the amounts would be calculated through the ordinary course of administration without her attorney providing additional documentation to petitioners. Based on the evidentiary record before us, it appears that the dispute between the parties regarding the settlement agreement arose because they had different understandings about how valuation of the assets of the estate would be determined. Petitioners averred that respondent would provide the attorneys with asset information, including an appraisal of the Iowa property. Respondent apparently believed that the assets of the estate would be

determined by the inventories filed in the probate proceedings and that "[Johnstone] would have to expect me to do the right thing with regard to the property that was in probate." Moreover, respondent denies agreeing to provide any further documentation to petitioners, although her attorney's March 20 letter to opposing counsel states that she would have the Iowa property appraised.

The determination of how to calculate the 10 percent shares is a material term of the parties' bargain. Without agreement on that issue, there could be no agreement that could form the basis of an enforceable contract. Without agreement on what assets were subject to the 10 percent shares, the object of the settlement agreement—to settle the pending litigation—would be frustrated. In light of the competing inferences from the evidence about what the parties agreed on, we are not prepared to hold that there are no genuine issues of material fact that exist in the summary judgment evidentiary record. On this record, a factfinder could determine that the parties came to an agreement on all material issues. But the agreement could be as either party described it. On the other hand, a factfinder could also conclude that there was no agreement on all material terms. Ultimately, those alternatives may depend on which version of the evidence the factfinder finds credible.

■ Respondent makes two additional arguments in support of the trial court's grant of summary judgment that we must address. The first is that the March 13 meeting did not produce an agreement as a matter of law because petitioners offered no consideration for respondent's promise to give them 20 percent of the estate. However, on March 13, petitioners' challenge to respondent's support petition was scheduled for an imminent hearing, and their will contest, if successful, would have reduced respondent's share of the estate to 50 percent of the net estate. Because the valid will had not been discovered by that date, petitioners' promise to cancel the support hearing and drop the challenge to the request for support was sufficient consideration to support a contract. Moreover, petitioners also presented evidence showing that, following the March 13 discussion, they cancelled the support hearing and agreed to stop the will contest. The above constitutes sufficient legal consideration for a binding agreement.

*See McPhail v. Milwaukie Lumber Co.*, 165 Or App 596, 600-01, 999 P2d 1144 (2000) (consideration exists when "the promissee would have foreborne some legal right that the promissee would otherwise be entitled to exercise").

Respondent's second argument involves petitioners' April 6 settlement offer of $85,000 and a car for each of them. Respondent points to that offer as evidence that the negotiations were ongoing and that, therefore, the March 13 conversation could not have constituted a final settlement. While that is one reasonable inference to draw from the summary judgment evidentiary record, another reasonable inference is that respondent breached the March 13 agreement by failing to provide the documents necessary to value the estate as had been previously agreed.[4] In sum, the issues of fact about the process to determine the value of the estate during their telephone discussion preclude summary judgment.

Having determined that summary judgment on petitioner's specific performance claim in favor of respondent was improper, we are required to vacate the award to respondent of an enhanced prevailing party fee. ORS 20.190 provides, in part:

"(3)   [I]n any civil action or proceeding in a circuit court in which recovery of money or damages is sought, the court may award to the prevailing party up to an additional $5,000 as a prevailing party fee. The court shall consider the following factors in making an award under the provisions of this subsection:

"* * * * *

"(e)   The objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings."

The statute, by its terms, is available only to parties who prevail in an action. Here, while respondent prevailed on the will contest claim, she has yet to prevail in the action brought by petitioners, which includes a claim for specific performance of

---

[4] Both parties rely on our decision in *Hughes v. Misar*, 189 Or App 258, 76 P3d 111 (2003). In *Hughes*, we found that the parties reached an agreement based on facts established at *trial*. The holding of *Hughes* has no import to this case because of the different standard of review required by its summary judgment posture.

the alleged settlement agreement. Our partial reversal of the trial court's judgment therefore operates to vacate respondent's enhanced prevailing party fee award. *See Wagner v. McNeely*, 161 Or App 215, 223, 984 P2d 943 (1999) (vacating enhanced prevailing party fee on partial reversal).

We turn to respondent's cross-appeal regarding the trial court's denial of her request for attorney fees. Because of our remand of the claim for specific performance, it is premature to determine the issue of attorney fees under ORS 20.105. The outcome at trial of the specific performance claim could make the issue moot.[5]

Judgment on specific performance claim reversed and remanded; enhanced prevailing party fee vacated; otherwise affirmed on appeal and cross-appeal.

---

[5] If the issue arises after trial, findings are required regarding the relevant facts and legal criteria on which the trial court relies. *McCarthy v. Oregon Freeze Dry, Inc.*, 327 Or 84, 96, 957 P2d 1200, *adh'd to on recons*, 327 Or 185, 957 P2d 1200 (1998).