Argued and submitted December 14, 2007, reversed October 15, 2008

Brian Keith CESSNUN,
*Plaintiff-Respondent,*

*v.*

James Phillip DAILY,
Jerry Howe and Elaine Howe,
husband and wife,
*Defendants-Appellants.*

Lincoln County Circuit Court
050748; A134281

194 P3d 861

Jeff Waarvick argued the cause for appellants. With him on the joint briefs were Waarvick & Waarvick, and Richard Diaz and Macpherson, Gintner, Gordon & Diaz.

Sheryl Balthorp argued the cause for respondent. With her on the brief was Gaydos, Churnside & Balthorp, P.C.

Before Edmonds, Presiding Judge, and Armstrong, Judge, and Sercombe, Judge.

SERCOMBE, J.

**SERCOMBE, J.**

Defendant James Phillip Daily (Daily) contracted to sell real property to plaintiff Brian Cessnun (Cessnun). The transaction did not close, and Daily subsequently agreed to sell the property to defendants Jerry and Elaine Howe (the Howes). Cessnun brought an action to compel specific performance of his earnest money contract with Daily and for a declaration that his right to purchase the property was superior to any claim of the Howes. The trial court entered a judgment granting that relief. Daily and the Howes appeal that judgment. On *de novo* review, ORS 19.415(3), we reverse.

The evidence at trial showed the following facts. Daily owned Tax Lots 300 and 303 in Lincoln County. The lots are separated by Shot Pouch Road. Tax Lot 300 is approximately 15 acres in size and lies west of the road. Tax Lot 303 is a 6.37-acre parcel that is east of the road. Both parcels are improved with a residence. In 1985, Cessnun and his wife leased about one acre of Tax Lot 303 from Daily's predecessor for residential use. Cessnun and his wife have lived in a mobile home on the leasehold property since then.

Under the terms of the 1985 lease, Cessnun and his wife could occupy the property "for the life time of both of them, or the survivor." In consideration, the lessees agreed to install and maintain a water system to serve the Cessnun home on Tax Lot 303 and the residence on Tax Lot 300 for the duration of the lease.[1] Originally, Cessnun and his wife provided water from a spring. In 1995, they dug a well to serve the water needs of both residences.

In early December 2004, Daily told Cessnun that he intended to sell both tax lots. Cessnun expressed an interest in buying Tax Lot 303 for $20,000 and, on a handshake, Daily and Cessnun preliminarily agreed to the sale. The parties

---

[1] The lease provided:

"In consideration for this lease the Lessees will install a septic system for their mobile home and the water supply, consisting of 1200 gallon storage tank and lines to both their home and to Lessor's home which is across the County Road. The Water system is to be kept in working order. A pump in creek is to be kept in working order to supply water in case spring water is low."

recognized that Cessnun's purchase of the property would affect the lease agreement.[2]

For some time, both parties had been interested in revising the Cessnuns' obligation to provide water to the residence on Tax Lot 300. Cessnun wanted to reduce the lifetime duration of the duty and to maintain the water system only on his property and not the pipes on Tax Lot 300. Cessnun also wished to limit the use of water to indoor household use. Daily had expressed an interest in improving the water system's pressure and in establishing a duration for the supply obligation that would enhance the marketability of Tax Lot 300.

The discussions about a new water supply agreement continued when Cessnun offered to purchase Tax Lot 303. The parties discussed the duration of an agreement. Daily had earlier suggested a term of 10 years, but then told Cessnun that he would consider eight years. Cessnun felt that eight years was too long and suggested three years, which Daily thought was too short. The terms of a new water supply agreement remained unresolved.

With the help of a mortgage broker, and using a form agreement, Cessnun drafted an earnest money contract for the purchase of Tax Lot 303. On December 10, 2004, Cessnun delivered the agreement to Daily for his written acceptance, along with $100 in earnest money. In the earnest money contract, Cessnun offered to purchase Tax Lot 303 for $20,000 cash, "subject to [Cessnun] and [Daily] agreeing on new water agreement for home located at [Tax Lot 300]." The contract provided that the "Existing Lease between [Cessnun] and [Daily] will be Eliminated upon successful closing of this Transaction." The contract called for the transaction to close on or before January 20, 2005, and stated that "[t]ime is of the essence." Daily accepted and signed the contract on December 16, 2004.

Cessnun and Daily did not communicate again until after the closing date. Before that time, Cessnun and his wife received a "pre-qualification approval" for a loan. On January

---

[2] Although Cessnun's wife was a lessee and obligor under the 1985 lease, she was not a party to the subsequent real estate transaction or the litigation.

19, one day before the closing date, the lender had completed an appraisal of the property, but had not yet approved a loan. Although the parties agree that they had intended to negotiate a water supply agreement, they never continued negotiation of the terms of any new arrangement.

On January 21, neither party was aware that the closing date had passed. Cessnun saw Daily and his son working on Tax Lot 300 and went over to tell Daily that the lender had been out to appraise the property. Daily responded, "Good. Now maybe things will get moving forward." Daily asked Cessnun how the new water agreement was coming along, and Cessnun said that he was working on it. The parties spoke briefly about possible terms. Daily suggested that perhaps after five years, the owner of Tax Lot 300 might be required to pay Cessnun for water. The parties had no further contact until February 4, 2005.

In the meantime, the Howes became interested in purchasing Tax Lot 300. On January 29, 2005, they visited Cessnun and indicated that they were aware that Cessnun was going to buy Tax Lot 303. Cessnun and the Howes briefly discussed the possibility of a water agreement between Cessnun and the future owners of Tax Lot 300. On February 1, 2005, Cessnun retained an attorney who, for a fee of $100, drafted a new water agreement that contained terms acceptable to Cessnun.

On February 4, 2005, the Howes were preparing to make an offer on Tax Lot 300. Daily contacted the Howes through their realtor and invited them to make an offer of $20,000 on Tax Lot 303 as well, explaining that the closing date of the earnest money contract had passed and that Daily had not heard from Cessnun. The Howes later presented an earnest money contract for both parcels.

Later on February 4, Cessnun presented Daily with the draft water supply agreement, as well as a proposed extension of the earnest money contract. Daily told Cessnun that the contract had expired and that he had decided to sell Tax Lot 303 to the Howes. On February 6, 2005, Daily accepted the Howes' offer to purchase both parcels.[3]

---

[3] Daily and the Howes closed the transaction for the sale of Tax Lot 300. Tax Lot 303 remains in escrow pending the outcome of this litigation.

On February 18, 2005, Cessnun filed this action seeking specific performance of the earnest money contract and a declaration that his rights to purchase Tax Lot 303 were superior to the Howes' rights. After trial, the court issued a memorandum opinion, finding that, by encouraging Cessnun to continue working on a water supply agreement after the closing date, Daily waived the time is of the essence clause of the earnest money contract. The court found further that, because Cessnun had acted on that encouragement by "getting an appraisal for financing and a water agreement," Daily was equitably estopped to reinstate the time is of the essence provision or to assert that the earnest money contract had expired.[4] The court further found that the parties had satisfied the conditions of the earnest money contract. Despite Cessnun's attorney's concession in closing argument that the parties had not reached agreement on the terms of a new water agreement,[5] the trial court found that they had, reasoning that the only term that had been discussed by the parties was the agreement's duration, which could be supplied by the court.[6] The court found that Daily had expressed

---

[4] The trial court found:

"In reliance on what Cessnun believed was still a valid contract of sale based on Daily's approval of the sale going forward, he had a lawyer draft his proposed water agreement. It wasn't until he went to the Daily home on February 4, 2005, with an extension so financing would become a reality, that he learned from Daily that he had sold the parcel to Howe. At no time prior to this moment did Daily advise Cessnun that he was reinstating the time of the essence clause and would require closing immediately, and allowing Cessnun a reasonable period of time to complete the sale.

"* * * * *

"There was an agreement to sell [Tax Lot 303] for $20,000 and for the buyer, Cessnun, to prepare a water agreement. Cessnun, an inexperienced property buyer, prepared the earnest money agreement and put in a date to his liking because he thought the matter would close faster than it did. On the day after the closing date of January 20, 2005, Cessnun and Daily discussed the deal and Daily gave Cessnun the go ahead to complete it, knowing Cessnun was getting an appraisal for financing and a water agreement. In reliance on this, Cessnun had a lawyer draft a water agreement, obtain an appraisal, and had near final approval for the loan."

[5] Plaintiff's attorney stated in closing:

"[B]ased upon the evidence that we have before us today, I would say that the parties had not yet come to a meeting of the mind on the Water Agreement."

[6] The court explained that the parties could work out the other details of the new water agreement later, through litigation.

agreement with a term of eight years and, on that basis, it ordered performance of a new water agreement for the parties, substituting a duration of eight years for the lifetime obligation and otherwise including all of the terms of original water agreement contained in the lease. It ordered that the earnest money contract be enforced according to those terms.[7]

Daily and the Howes appeal. Their first four assignments of error challenge the trial court's rulings requiring specific performance of the earnest money contract, contending that the court erred in enforcing the agreement in the absence of a necessary condition precedent (a negotiated water supply agreement), in finding that the parties entered into a new water supply agreement, in imposing a water supply agreement on the parties, and in enforcing the contract without a tender of performance. The fifth assignment of error complains about the court's determination that Daily waived the time is of the essence clause and should be estopped from enforcing the original closing date. Because we conclude that the court erred in enforcing the earnest money contract without a fully negotiated water supply agreement, we do not reach the fifth assignment of error.

■■ The existence of an unsatisfied condition precedent can preclude specific performance. *Oregon Southwest, LLC v. Kvaternik*, 214 Or App 404, 408, 164 P3d 1226 (2007), *rev den*, 344 Or 390, 181 P3d 769 (2008). " 'A condition is an

---

[7] The trial court found:

"Daily and Howe argue that the condition the parties reach a water agreement never occurred so the contract should not be specifically enforced. Actually, the parties did reach a water agreement, they just didn't get it in writing before Daily called off the sale. The parties started with a ten-year period and were between the difference of eight by Daily and five by Cessnun. Why does the court say they reached an agreement? There was an agreement between [Daily's predecessor], assumed by Daily that Cessnun supply water to Tax Lot 300 during the period of the life estate lease. When Daily and Cessnun talked about the water agreement, nothing was mentioned about it other than it was to run for a term of years and then, 'Cessnun could charge for the water.' Cessnun's wish to limit the use to household, was just that, a wish. Daily's ex-wife's concern about the potability of the water was not mentioned. For the court to close the corners of the agreement to sell, it would only need to insert a number of years. It is clear Daily agreed to eight and that is the number the court will insert, along with the agreement as originally drawn by [the lawyer for Daily's predecessor]."

event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due.' " *Hill v. Oland*, 61 Or App 85, 90, 655 P2d 1088 (1982) (quoting *Restatement (Second) of Contracts* § 224 (1981)).

■■ Whether a condition precedent exists, and what it means, depends " 'upon the intent of the parties, to be ascertained from a fair and reasonable construction of the language used in the light of all the surrounding circumstances.' " *Dan Bunn, Inc. v. Brown*, 285 Or 131, 143, 590 P2d 209 (1979) (quoting *Ross v. Harding*, 64 Wash 2d 231, 236, 391 P2d 526, 531 (1964)). It is not disputed that a new water supply agreement was a condition precedent to closing and performance of the earnest money contract. The contract stated explicitly that it was "[subject to [Cessnun] and [Daily] agreeing on new water agreement." As the Supreme Court has stated, the words "subject to" indicate an "intent to impose a condition precedent which, unless satisfied, would prevent specific performance of the contract." *Dan Bunn, Inc.*, 285 Or at 143. Thus, we conclude that negotiation of a "new water agreement" was a condition precedent to the parties' obligation to perform the earnest money contract.

■ The remaining question is whether that condition was satisfied. In the trial court's view, the parties had reached a new water agreement. The court recognized that both parties understood that Cessnun's purchase of Tax Lot 303 required a new water agreement. The trial court apparently reasoned that, because the only term that had been discussed was duration, that the length of the agreement was the *only* material term, and the court could supply that term by choosing a duration that Daily—the party for whose benefit the new water agreement existed—had at one time said would be sufficient. We appreciate the trial court's attempt to help the parties reach an agreement, but in setting a duration and incorporating the terms of the original water agreement contained in the lease, the court did not enforce the parties' agreement—it made one for them. For the following reasons, on *de novo* review, we find that the parties did not come to terms on a new water agreement.

■ There was simply no meeting of the minds between Cessnun and Daily on the duration of a new water supply agreement, a material term to the contract. Whether a contractual term is material is a question for the factfinder, unless the uncontested evidence leads to only one legal conclusion. *Johnstone v. Zimmer*, 191 Or App 26, 34, 81 P3d 92 (2003). Because our review is *de novo*, we determine which terms were material to the parties in this case. *Povey v. Clow*, 146 Or App 760, 765, 934 P2d 528 (1997). We conclude that the duration of any new water agreement was a material term, because it goes to the substance of the water agreement and, if breached, would defeat the object of the parties in entering into that agreement. *See Johnstone*, 191 Or App at 34. The duration of the water supply agreement affected the value of Tax Lot 303, the property being sold, and the viable use of Tax Lot 300 for residential purposes. The parties began discussions on the terms of a new water supply agreement with proposals for its duration, treating that issue as a core part of any agreement. The duration of the agreement was plainly a material term.

Moreover, the record shows that there were other material terms to a new water agreement that the parties had discussed, including whether Cessnun's duties would include maintaining the water system on Tax Lot 300 and whether the owners of Tax Lot 300 could use the water for outdoor purposes. None of those terms had been agreed to, and the court could not, as the trial court suggested, leave them for future negotiation or litigation.

Because a new water agreement was a condition precedent to performance of the earnest money contract, and because we conclude that the parties failed to agree on the material terms of a new water agreement, the earnest money contract was not subject to specific enforcement. The trial court erred in ordering specific performance of that contract.[8] Having concluded that the earnest money contract was not subject to specific performance because of the failure of a condition precedent, we need not address whether the contract

---

[8] Cessnun did not plead a damage claim for breach of contract against Daily. Whether a contract can be specifically enforced is a different issue from whether a defaulting party is liable in damages for breach of contract.

lapsed when the parties failed to close on January 20, 2005. Because the trial court erred in entering a judgment for specific performance, the remaining parts of the judgment granting declaratory relief to Cessnun and awarding costs are also erroneous.

Reversed.